**Tomas Alberty AVILES,
et al., Plaintiff(s),**

v.

**DEPARTMENT OF THE ARMY,
et al., Defendant(s).**

**Civil No. 06–1334 (DRD).**

United States District Court,
D. Puerto Rico.

Sept. 8, 2009.

Harry Anduze–Montano, Jose A. Morales–Boscio, Harry Anduze Montano Law Office, San Juan, PR, for Plaintiffs.

Ginette L. Milanes, United States Attorneys Office, District of Puerto Rico, San Juan, PR, for Defendants.

## AMENDED ORDER NUNC PRO TUNC

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court are several matters, to wit: (a) *Second Motion For Summary Judgment And To Stay Discovery* (Docket No. 80) filed by defendants; (b) plaintiffs' *Motion In Opposition To Defendants' Second Motion For Summary Judgment And To Stay Discovery* ("Opposition") (Docket No. 93); and (c) *Defendants' Reply to Plaintiffs' Motion In Opposition To Defendants' Second Motion For Summary Judgment And To Stay Discovery* ("Defendants' reply") (Docket No. 96). For the reasons set forth below, the defendants' request for summary judgment is granted.

### Factual and Procedural Background

Plaintiffs herein allege that they are innocent victims of an illegal search in their homes conducted by the defendants, the United States Department of the Army through the Military Police Investigation Division of Fort Buchanan, Puerto Rico, on March 30, 2005. Mr. Tomas Alberty Avilés was at the time a civilian employee at Fort Buchanan, Puerto Rico ("Fort Buchanan"), who had worked at Fort Buchanan for several years, and was well known by the Military Police. *See* Docket No. 80, ¶ 9.

Defendants allege that, on March 30, 2005, they responded to a confidential reliable tip that Alberty Avilés ("Alberty Avilés") together with one Sergio Figueroa Villanueva ("Figueroa"), a non-party, also

a civilian employee, were "engaged in a scheme of stealing government property." *See* Docket No. 80, ¶ 1. The Military Police Investigation Division of Fort Buchanan ("Military Police"), while conducting an undercover surveillance, observed Alberty Avilés and Figueroa remove two refrigerators, two washing machines and twenty-five fifty gallon plastic trash cans from the Housing Division Warehouse (Bldg. 608) located in the premises of Fort Buchanan. *See* Docket No. 80, ¶ 2. Said government property was loaded to a government owned truck at the Housing Division Warehouse (Bldg. 608), which was driven afterwards to a nearby parking lot. The government property was then transferred to a private truck, and driven off post to Alberty Avilés' home. *See* Docket No. 80, ¶¶ 2–3. Later, Tomás Alberty Avilés paid $700.00 to Figueroa for the stolen property being withdrawn from the Military Base warehouse. *See* Docket No. 80, ¶ 10.

Defendants allege that they were in contact, at all times, with the Department of the Army Civilian Police ("DACP"), and Captain Jonathan M. Persons, who was at the time, the Chief of Military Justice and SAUSA in charge of investigating and prosecuting crimes at Fort Buchanan. *See* Docket No. 80, ¶ 4. Capt. Pearsons authorized the arrest of Tomás Alberty Avilés after he drove off post with the government property. *See* Docket No. 80, *Declaration of Jonathan M. Persons Pursuant to 20 U.S.C. § 1746.* Defendant Víctor Franco, DACP Officer ("Officer Franco"), waited until Tomás Alberty–Avilés drove off post and followed Alberty Avilés to his home, while defendant Vicente González, the Deputy Provost Marshal ("Officer González"), allegedly called the Police of Puerto Rico twice to request assistance, which was denied, as apparently no state police officers were available. *See* Docket No. 80, ¶ 3. Officers Franco and González were in constant telephone communication regarding the events as they unfolded. The

federal authorities were, thus, in "hot pursuit" of the individuals, which they understood were taking or removing property "in plain view" from a federal warehouse. When Officer Franco arrived to Tomás Alberty–Avilés' house, he observed that several boxes of electronics were transferred to the house next door, that is, the house of his father Tomás Alberty Orona, by Tomás Alberty Avilés and Israel Alberty Avilés, who was aiding in the transfer of the boxes. *See* Docket No. 80, ¶ 4. After relating this information to Officer González, Officer Franco was then authorized by Capt. Persons through Officer Gonzalez to arrest Tomás Alberty Avilés, only if the stolen government property was in "plain view." *See* Docket No. 80, ¶ 4. After Officer Franco confirmed to Officer González and Capt. Persons that the stolen government property was in "plain view," and that several boxes of electronics were being moved from Tomás Alberty Avilés' house to the house next door, then Officer Franco proceeded to apprehend the Alberty Avilés brothers, and read them the *Miranda* rights, which they waived. *See* Docket No. 80, ¶ 5. Thereafter, Officers González and García arrived at the scene, and after several admissions made by Tomás Alberty Avilés, the handcuffs were removed from both the Alberty Avilés brothers. *See* Docket No. 80, ¶ 6.

Officer García inquired Tomás Alberty Avilés about the boxes of electronics. Tomás Alberty Avilés indicated that he had the sales receipt in his bedroom, and invited Officer García to search the house. *See* Docket No. 80, ¶ 7. Officer García agreed, provided that Tomás Alberty Avilés consented in writing to the search. Alberty Avilés consented in writing to the search. Tomás Alberty Avilés showed Officer García a "room packed with new DVD players, VCR players, coffee pots, etc." *See* Docket No. 80, ¶ 7. "Next, Alberty [Avilés] went

to his bedroom to retrieve the receipts."[1] *Id.* "García remained outside the bedroom." *Id.* "Alberty [Avilés]'s wife never woke up or got out of bed." *Id.* The Albertys, that is, Tomás Alberty Avilés, Tomás Alberty Orona, and Israel Alberty Avilés (Tomás Alberty Avilés' brother), were taken later that day to Fort Buchanan to complete the arrest process. *See* Docket No. 80, ¶¶ 4–8. "Back at the base, Tomas Alberty Avilés was advised of his legal rights and waived them." *See* Docket No. 80, ¶ 10. "He [Tomás Alberty Avilés] then rendered a sworn statement in which he admits to purchasing the stolen items [refrigerators, washing machines and plastic trash cans] for $700. from Mr. Figueroa." *Id.* Thus, plaintiff Tomás Alberty Avilés participated in removing the stolen goods and the subsequent purchase of them.

The record shows that none of the Albertys remained in custody, after they were questioned, and no criminal charges were filed against any of them. Alberty Orona was not fingerprinted nor handcuffed. *See* Docket No. 93, Statement of Alberty Avilés of May 15, 2009, clarifying his prior statement of March 26, 2009. Moreover, none of the statements contest the fact that Tomás Alberty Avilés was apprehended for stealing government property.

On March 31, 2005, Figueroa was arrested by the DACP Officers, after advising him of his rights. "Mr. Figueroa also waived his rights and rendered a sworn statement in which he admits to conspiring with Alberty Avilés to steal government property and then sell it to him." *See* Docket No. 80, ¶ 11. "Mr. Figueroa also admits that this scheme had been ongoing since U.S. Army South was moved from Panama and government property began arriving in Puerto Rico." *See* Docket No. 80, ¶ 11.

No criminal charges were subsequently filed against Tomás Alberty Avilés nor any other plaintiff. *See* Docket No. 93, ¶ 2.22. Plaintiffs deny the factual allegations made by defendants supported by sworn statements, which only rebut the scope and the procedure followed by the Military Police at the search conducted by defendants of plaintiffs' premises, the alleged use of firearms, the alleged life threats made by defendants, the alleged humiliation suffered by Tomás Alberty Avilés' wife, and the scare emotion provoked on their children, other relatives and neighbors. In sum, the fact that the Tomás Alberty Avilés and his brother Israel were apprehended after stolen government property was seen in plain view, and the fact that stolen government property was indeed seized on site, remain uncontested, as well as Figueroa's admission as to his participation with Tomás Alberty Avilés. *See* Docket No. 80, ¶ 11. The Court notes that the "[e]stimated recovery from this incident is approximately $5,250.00" (Docket No. 1, page 33).

Tomás Alberty Avilés claims loss of wages in the amount of $1,500,000.00 as a *Bivens* claim. *See* Complaint, (Docket No. 1, ¶ 84).

Lastly, the Court notes that only the Department of the Army and Col. Steve Hackman, Commander of Fort Buchanan, have been properly served with a copy of the complaint. Service of process of defendants, Rogelio Vales, Víctor Franco, Melvin García and Vincent González, was made by publication. *See* Docket No. 86. Notwithstanding, all defendants "appear

---

1. The Court notes that Alberty Avilés, Jr. had the purchase receipts of the electronic equipment in his bedroom, but the receipts only included the electronic equipment and not the refrigerator, the washing machine nor the plastic trash cans recently removed from the Military Base warehouse. *See* Docket No. 80, ¶ 7.

without submitting to the jurisdiction of this Honorable Court." *See Second Motion For Summary Judgment And To Stay Discovery* (Docket No. 80, n. 1).

### Applicable Law and Discussion

**A. Qualified Immunity.**

■■■ The Court finds that this is a *Bivens*[2] case. Generally, the Court needs not to decide, at this stage of the proceedings, whether or not summary judgment should be granted, since the first procedural step is to resolve the defendants' request for qualified immunity. *See Pearson v. Callahan*, ── U.S. ──, 129 S.Ct. 808, 815–820, 172 L.Ed.2d 565 (2009) (ALITO, J.). *Pearson* held:

> **The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."** *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity balances two important interest— the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, **and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a "mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."** *Groh v. Ramirez*, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (citations omitted).
>
> Because qualified immunity is "an immunity from suit rather than a mere defense to liability ... it is effectively

lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Indeed, we have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that " 'insubstantial claims' against government officials [will] be resolved prior to discovery." *Anderson v. Creighton,* 483 U.S. 635, 640, n. 2, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Accordingly, "we have repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

In *Saucier,* 533 U.S. 194, 121 S.Ct. 2151 [*Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ], this Court **mandated** a two-step sequence for resolving government officials' qualified immunity claims. **First, a court must decide whether the facts that a plaintiff has alleged (see Fed. R.Civ.P. 12(b)(6), (c)) or shown (see Fed.R.Civ.P. 50, 56) make out a violation of a constitutional right.** 533 U.S. at 201, 121 S.Ct. 2151. **Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue "was clearly established" at the time of defendant's alleged misconduct.** *Ibid.* **Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.** *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034.

. . .

But the *Saucier* rule is judge made and implicates an important matter involving internal Judicial Branch operations.

**2.** *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Any change should come from this Court, not Congress.

. . .

On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it **should no longer be regarded as mandatory. The judges of the district and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.**

. . .

Unnecessary litigation of constitutional issues also wastes the parties' resources. Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell*, 472 U.S. at 526, 105 S.Ct. 2806 (emphasis deleted).

. . .

When qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify. (Citations omitted). Accordingly, several courts have recognized that the two-step inquiry "is an uncomfortable exercise where . . . the answer [to] whether there was a violation may depend on a kaleidoscope of facts not yet fully developed" and have suggested that "[i]t may be that *Saucier* was not strictly intended to cover" this situation. *Dirrane v. Brookline Police Dept.*, 315 F.3d 65, 69–70 (1st Cir.2002); *see also Robinette v. Jones*, 476 F.3d 585, 592, n. 8 (8th Cir.2007) (declining to follow *Saucier* because "the parties have provided very few facts to define and limit any holding" on the constitutional question). (Emphasis ours).

Further, in *Pearson, supra*, the Court cited *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982),

"noting that the Court's decisions equate the qualified immunity of state officials sued under 42 U.S.C. § 1983 with the immunity of federal officers sued directly under the Constitution." 129 S.Ct. at 819, n. 1. In sum, the Court in *Pearson, supra*, granted qualified immunity to state law enforcement agents who conducted a warrantless search of a house incident to an arrest, as are the facts in the instant case, "on the ground that it was not clearly established at the time of the search that their conduct was unconstitutional."

■ Under either analysis, following or not the sequential two-step analysis, qualified immunity is to be granted to all officers sued since they were following government goods stolen from a government warehouse military base in "plain view" to a private residence. Officer Franco, a law enforcement agent, saw the stealing of government property in "plain view," and followed the goods, as authorized by Capt. Persons. Moreover, Officer Franco followed Tomás Alberty Avilés off base, upon authorization of Capt. Persons, after Officer González' two telephone calls to the Police of Puerto Rico to request assistance were unsuccessful for no state officers were available at the time. *See* Docket No. 80, ¶ 3. (The alleged Posse Comitatus Act violation is immaterial, *see* analysis at the Posse Comitatus Act discussion *infra* ).

Officer Franco's followed the stolen goods off base to Tomás Alberty Avilés' residence, wherein again the stolen goods were seen in "plain view," and proceeded with the arrest of Tomás Alberty Avilés. Consequently, probable cause was triggered by the events as they commenced on the base following the removal of the stolen goods off base. The arrest was authorized by a judge advocate counsel of the Army, and can be performed by personnel of the "Department of Defense," which Department includes by disposition of fed-

eral law, the United States Department of the Army, all pursuant to the authority granted by Puerto Rico law, *see* discussion *infra,* at section "C," The Posse Comitatus Act. Thus, the search of Tomás Alberty Avilés' house was also warranted incidental to his arrest. The searches incidental to the arrest of Tomás Alberty Avilés, as well as that of Israel Alberty Avilés, are warranted, and do not violate the detained constitutional rights under the Fourth Amendment of the United States Constitution.[3]

The Court finds that the required first step to avoid a qualified immunity determination was not met, (the "show[ing] of a violation of a constitutional right" by plaintiff Tomás Alberty Avilés, *see Pearson,* 129 S.Ct. at 815–816), as there was probable cause that plaintiffs Tomás and Israel Alberty Avilés were involved in the stealing of government property or purchasing of stolen property. Since plaintiffs failed to controvert the first step, as to the lack of an alleged illegal search and seizure, then qualified immunity is granted as to Tomás Alberty Avilés and Israel Alberty Avilés. In the event that Tomás Alberty Orona shows that he was the subject of a false arrest, then qualified immunity is also granted as to Alberty Orona.

The second step of the qualified immunity doctrine proceeds, the right to arrest under a "plain view" scenario by observing agents the stolen government goods being removed from the base warehouse and ending with a search incidental to the arrest at Tomás Alberty Avilés' residence, is a matter "clearly established."

## B. The *Bivens'* claims.

In *Bivens v. Six Unknown Named Agents Of Federal Bureau Of Narcotics,*

403 U.S. 388, 395–396, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Court held that "damages may be obtained for injuries consequent upon a violation of the Fourth Amendment by federal officials. . . ." If "petitioner's complaint states a cause of action under the Fourth Amendment, . . . ," "we hold that petitioner is entitled to recover money damages for any injuries he has suffered as a result of the agents' violation of the Amendment." 403 U.S. at 397, 91 S.Ct. 1999. Money damages under *Bivens,* however, are allowed on the agent in his personal capacity.

 "The analysis of qualified immunity is identical for actions brought under § 1983 and *Bivens.* (Citations omitted)." *Abreu–Guzmán, et al. v. Ford, et al.,* 241 F.3d 69, 72 (1st Cir.2001). The Court, before *Saucier,* must determine: (a) "whether plaintiff has alleged the deprivation of an actual constitutional right;" *Id.;* (b) "whether that right was clearly established at the time of the alleged violation;" *Id.;* and (c) "whether an objectively reasonable officer, performing discretionary functions, would have understood his or her conduct violated that clearly established constitutional right." *Abreu–Guzmán,* 241 F.3d at 72, citing *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Crawford–El v. Britton,* 523 U.S. 574, 591, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998), (now allowed by the qualified immunity test authorized in *Pearson,* 129 S.Ct. at 815–820). In *Ruiz Rivera v. Riley,* 209 F.3d 24, 28 (1st Cir.2000), the Court held that "[a] *Bivens* action only may be brought against federal officials in their individual capacities. Even then, the **plaintiff must state a claim for direct rather than vicarious liability;** responde-

---

**3.** "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall

issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

at superior is not a viable theory of *Bivens* liability." (Citations omitted). (Emphasis ours). The two-step test to determine whether the officer is entitled to qualified immunity is no longer mandatory to be performed in the traditional sequential order following *Pearson*, 129 S.Ct. at 818. The trial or appellate courts may choose "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson, supra.*

■ In the instant case, defendants responded to a reliable tip by conducting a close surveillance of the individuals allegedly stealing government property from a federal warehouse on base, and transporting said property off base. Officer Franco kept Officers González and García, and military counsel Capt. Persons, informed of the events as they unfold during the surveillance. Hence, based on the record, there is no reason to believe that the federal agents involved in this surveillance and eventual apprehension of the Albertys, exercised their power irresponsibly. "The protection of qualified immunity applies regardless of whether the government official's error is a 'mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 129 S.Ct. at 815.

Moreover, in the case at bar, the record shows that the only plaintiff claiming money damages under *Bivens* is Tomás Alberty Avilés, who is claiming $1,500,000.00 for loss wages. *See Complaint* (Docket No. 1, ¶ 84). The Court, however, has determined that the defendants' officers are entitled to qualified immunity, as the record shows that the defendants were acting

following stolen government property in "plain view" under the authority of counsel, Capt. Persons, a Special Assistant U.S. Attorney in the Office Staff Judge Advocate at Fort Buchanan. Tomás Alberty Avilés and Figueroa were precisely observed removing federal property from a warehouse on a military base. Thereafter, the stolen government property is transferred to a non-governmental truck in a parking lot on base, and said truck ends at Tomás Alberty Avilés' home. It is also observed that Israel Alberty Avilés, brother of Tomás Alberty Avilés, is aiding in the unloading of the stolen goods (the refrigerators, washing machines and trash cans), at Tomás Alberty Avilés' house. *See* Docket No. 80, ¶ 4. Hence, based on the record, the *Bivens* claim is unfounded, as it is reasonable to conclude that the defendants' conduct was objective and reasonable under the circumstances.

The defendants reasonably proceeded with the arrest, as the Puerto Rico Police had informed that no officers were available. Regardless, as stated *infra*, the federal officers could perform the arrest under Puerto Rico law, which allows members of the "Department of Defense," to make such arrest, as pursuant to federal law the "Department of the Defense" includes the three Armed Forces.

## C. The Posse Comitatus Act.

The Posse Comitatus Act, 18 U.S.C. § 1385 provides:

Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as posse comitatus[4] or otherwise

---

4. "The phrase 'posse comitatus' is literally translated from Latin as the 'power of the county' and is defined at common law to refer to all those over the age of 15 upon whom a sheriff could call for assistance in preventing any type of civil disorder. H.R.Rep. No. 97–

71, Part II, 97th Cong., 1st Sess. 4 (1981), reprinted in 1981 U.S.Code Cong. & Ad. News 1785, 1786 (citing 1 W. Blackstone, *Commentaries*, 343–44)." *United States v. Hartley*, 796 F.2d 112, 115, n. 3 (5th Cir. 1986).

to execute the laws shall be fined under this title or imprisoned not more than two years, or both.

■ Precedent stated herein *infra,* clearly shows the non-applicability of the Posse Comitatus Act to the instant case. The Court finds plaintiffs' argument on the alleged violation under the Posse Comitatus Act is unwarranted, and a last minute desperate afterthought, at this late stage of the proceedings, which is not pled anywhere in the complaint. The Court notes that the complaint only includes two causes of action, a *Bivens* claim, and a claim under the Federal Tort Claims Act. *See* Docket No. 1. The record is clear that the complaint does not set forth any specific constitutional violations, nor a violation under the Posse Comitatus Act. No amendments to the complaint will be authorized at this late stage of the proceedings.

First, as correctly stated by the defendants in their reply (Docket No. 96, page 3), Act No. 98 of April 23, 2004, granted federal law enforcement agents the same powers to arrest as Puerto Rico law enforcement officers. Indeed, the annotations of Rule 11 [5] of the Puerto Rico Rules of Criminal Procedure, under the subtitle of Special Provisions, made reference to Act No. 98 of April 23, 2004, which provides:

> Federal law enforcement officers of the Federal Bureau of Investigations (FBI), U.S. Marshals Service, Drug Enforcement Administration (DEA), U.S. Coast Guard, Immigration and Naturalization Service, Bureau of Alcohol, Tobacco and Firearms, U.S. Secret Service, U.S. Customs Service, U.S.D.A. Forest Service, U.S. Postal Inspectors, and police officers of the Veterans Administration, the General Services Administration, the **Department of Defense,** [6] and the Postal Service, with the authority to make arrests when performing their functions as such, in the performance of their responsibilities and acting according to the limitations imposed by the enabling Act of their Agency, **shall be deemed to be law enforcement officers in Puerto Rico and shall exercise the powers to arrest in the same manner and subject to the same substantive and procedural provisions as the law enforcement officer of Puerto Rico, pursuant to Rule 11 of the Rules of Criminal Procedure.**

For the purpose of this Act, the term "law enforcement officers" shall mean any special agents, officers and officials of the Federal Bureau of Investigations (FBI), U.S. Marshal Service, Drug Enforcement Administration (DEA), U.S. Coast Guard, Immigration and Naturalization Service, the Bureau of Alcohol, Tobacco and Firearms, U.S. Secret Service, U.S. Customs Service, U.S.D.A. Forest Service, U.S. Postal Inspectors, and police officers of the Veterans Administration, the General Services Administration, the **Department of Defense,** and the Postal Service with the functions of keeping public law and order and who have the permission or authority to make arrests in the per-

---

**5.** Rule 11 provides in its pertinent part:

A peace officer may arrest a defendant **without** the corresponding warrant:

(a) When he has reasonable grounds to believe that the person about to be arrested has committed the offense in his presence. In this case, the arrest shall be made immediately or within a reasonable time after the commission of the offense. Otherwise, the officer shall request a that a warrant of arrest be issued. (Emphasis ours).

The Court notes that Rule 11 is based on section 836 of the California Code of Criminal Procedure.

**6.** 10 U.S.C. § 111(b)(6) provides that the Department of the Defense is composed of … "[t]he Department of the Army."

formance of their regular duties. (Emphasis supplied).

Second, even assuming *arguendo* that the Court finds that the defendants' arrest of plaintiffs is invalid, the same will be valid under the provisions of Rule 11 of the Puerto Rico Rules of Criminal Procedure. *See United States v. Mullin,* 178 F.3d 334, 338 (5th Cir.1999) ("We need not to decide whether, on the facts before us, Military Police had statutory authority to arrest Mullin; at the very least, they could make a citizen's arrest"). In *Mullin,* the Military Police observed the defendant breaking into a vehicle, hence, they had probable cause to arrest him.

In *Trenouth v. United States,* 764 F.2d 1305, 1307 (9th Cir.1985), the Court held:

> The FTCA provides that the law of the state where the alleged tort occurs is to be applied to determine whether the defendant committed a tort. 28 U.S.C. § 1346(b).
>
> . . .
>
> The fact that Trenouth [plaintiff] was not prosecuted or convicted on any charges arising from the incident does not indicate that the arrest is unlawful. **The Supreme Court has stated that "Under the prevailing view in this country a peace officer who arrests someone with probable cause [and in good faith] is not liable for false arrest simply because the innocence of the suspect is later proved."** *Pierson v. Ray,* 386 U.S. 547, 555, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1966). (Emphasis ours).

In the instant case, Officer Franco observed Tomás Alberty Avilés removing government property from a warehouse at Fort Buchanan in a government owned truck; transferring said property to a non-government truck in a parking lot in the premises of Fort Buchanan; removing the government property off base, and unloading the government property at Tomás Alberty Avilés' house, in "plain view."

Officer Franco was in constant communication with Officer González, who was also in communication with Capt. Persons, Chief of Military Justice at Fort Buchanan. The arrest of Tomás Alberty Avilés was authorized by Capt. Persons, conditioned on the fact that the stolen government property were in "plain view." These facts stands uncontested by plaintiffs. Hence, a violation of the Posse Comitatus Act is simply unwarranted, as the arrest was also valid under applicable Puerto Rico law. *See* n. 5 *infra.*

Lastly, the Court finds that it "will pretermit discussion of whether there was a violation of the statute or regulation." *United States v. Wolffs,* 594 F.2d 77, 85 (5th Cir.1979). "We need not decide that complex and difficult issue [the use of Army personnel in a case involving Army agents in a drugs investigation], because assuming without deciding that there was a violation, application of an exclusionary rule is not warranted." *Id. See also Hartley,* 796 F.2d at 115 ("It should also be noted that, even where a violation of the Posse Comitatus Act is found or suspected, courts have generally found that creation or application of an exclusionary rule is not warranted").

In the instant case, the entire controversy involves the removal of the stolen government goods from the military base in "plain view" by plaintiff Tomás Alberty Avilés to his house. The defendants' pursuit of the stolen goods resulted in the finding that some of the stolen goods in "plain view" were sold as stolen goods to plaintiff Tomás Alberty Avilés by Figueroa. But the Court clarifies that Tomás Alberty Avilés participated in originally removing the stolen goods from the Military Base warehouse with Figueroa. Hence, it is simply impossible to make a

finding of a violation to the Posse Comitatus Act, when the core of the investigation was of criminal nature, such as, stolen government property taken off base. Further, the federal authorities acted in "hot pursuit" following "plain view" stolen government property from on base premises to off base private property.

Finally, the Department of Defense type of officers, including Army law enforcement officers, are authorized to make arrests in Puerto Rico, pursuant to Rule 11 of the Puerto Rico Rules of Criminal Procedure.

## D. The Federal Tort Claims Act.

The Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, provides that the United States "shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, . . . ." 28 U.S.C. § 2674. This liability is subject to certain exceptions set forth in 28 U.S.C. § 2680. A review of 28 U.S.C. § 2680(h), clearly exempts the United States from liability in:

> Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of the chapter and section 1346(b)[7] of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of

assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, **"investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.** (Emphasis ours).

The record shows that except for the allegations made in the Complaint, ¶¶ 70–79, the claim made by plaintiffs under the Federal Tort Claims Act ("FTCA") has not been addressed in the summary judgment request nor in plaintiffs' opposition. Notwithstanding, the Court understands that it is proper to address this matter at this time, as several plaintiffs may not have a valid cause of action.

Under the above cited provision 28 U.S.C. § 2680(h), any plaintiff that was a subject of **"assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander,** misrepresentation, deceit, or interference with contract rights," may claim money damages, provided that claimant shows that the **law enforcement agent acted outside the scope of his office or his employment,** otherwise, it is covered under the 28 U.S.C. § 2680(h). (Emphasis ours). On the other hand, if plaintiffs were mere observers, then they were not victims of the alleged false arrest by the law enforcement agents. Hence, they are not entitled to consequential money damages under the FTCA, as a mere observer cannot claim

---

**7.** 28 U.S.C. § 1346(b) provides in its relevant part:

> (1) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court . . . ., shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of prop-

erty, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

consequential damages for an act or omission of a law enforcement agent, except if the law enforcement agent carried on an "assault, battery, false imprisonment, false arrest, abuse of process or malicious prosecution" on the claimant, *see* proviso at 28 U.S.C. § 2680(h). But the proviso obviously excludes liability when an officer acts within his scope of employment.

In sum, only the individual who is the subject of an "assault, battery, false imprisonment, false arrest, abuse of process or malicious prosecution" by a law enforcement agent of the United States, may have a claim under the FTCA, if not otherwise exempted under 28 U.S.C. § 2680.

Based on these premises, the Court will briefly analyze the alleged cause of action of each plaintiff:

### 1. Tomás Alberty Avilés:

■ Tomás Alberty Avilés is exempt from recovering money damages under 28 U.S.C. § 2680(h), as he was the subject of a criminal investigation of stolen government goods in "plain view," regardless of whether or not criminal charges were filed against him. Moreover, Tomás Alberty Avilés voluntarily consented to the search of his home, by inviting Officer Franco to search the premises while Tomás Alberty Avilés searched for the purchase receipts of the electronic equipment, both by verbal consent and by signing a handwritten consent followed by a consent form. *See* Docket No. 80, ¶¶ 4, 7, and the statements and signed forms in support thereof. In the alternative, the plaintiff was properly arrested under probable cause, and his house was subsequently incidentally searched to the arrest. Further, and most critical, once a law enforcement officer has probable cause there is no illegal arrest under the law, as there is no act or omission under 28 U.S.C. § 2680(h).

### 2. Israel Alberty Avilés:

Israel Alberty Avilés, brother of Tomás Alberty Avilés, is exempt from recovering money damages under 28 U.S.C. § 2680(h), as he was the subject under probable cause of a criminal investigation of stolen government goods in "plain view" (he was unloading the truck of stolen goods), regardless of whether or not criminal charges were filed against him. *See* Docket No. 80, ¶ 4. Further, he is also exempt under the statute, under the same analysis as his brother Tomás Alberty Avilés.

### 3. Ms. Virginia Solis:

Ms. Solis is the wife of Tomás Alberty Avilés, who was not the subject of the criminal investigation. Hence, any claim to recover money damages under the FTCA for the alleged "illegal search and arrest of her husband" is exempt, as she is not covered by the FTCA, as her right is founded on an alleged false arrest, wherein the federal officers had probable cause to believe a crime was being committed in their presence. Ms. Solis shall show cause in writing by **September 14, 2009,** whether she has a claim for false arrest.

### 4. Tomás Alberty Orana (Sr.) and Blanca Avilés:

Mr. Alberty Orana and his wife Blanca Avilés were not the subject of the criminal investigation. Hence, any claim to recover money damages under the FTCA for the alleged "illegal search and arrest of her husband" is unfounded, as they were not the subject of the criminal investigation. The wife Blanca Avilés is claiming consequential damages, but she was not the subject of any federal action. At the most, Blanca Avilés can claim damages derived from her husband alleged "false arrest." But the alleged "false arrest" of her husband has a probable cause foundation from

the federal officers, as the stolen goods were unloaded and eventually placed in his property. If her husband is exempt under 28 U.S.C. § 2680(h), caused by the "false arrest" exemption, with probable cause, then she is also exempted, as one who allegedly suffered consequential damages.

Ms. Avilés shall show cause in writing by **September 14, 2009,** whether she has a claim for false arrest, and whether her constitutional rights were violated for illegally searching her home. Mr. Alberty Orana shall also show cause in writing by **September 14, 2009,** whether he has a claim for false arrest, false imprisonment, and illegal search. The Court notes based upon the record, Mr. Alberty Orana voluntarily consented to the search of his home. Further, the stolen goods eventually reached her house. *See* Docket No. 80, ¶ 8. Mr. Alberty Orana alleges in his statement that he signed the consent form under duress. But even under duress, he then has a "false arrest" or "malicious prosecution" claim, as there was probable cause for the federal officers to arrest him, and which is exempt under FTCA.

### 5. Juana and Alberto Rodríguez:

■ Juana and Alberto Rodríguez, appeared wherein represented by Virginia Solís and stepfather Tomás Alberty Avilés. Juana, who is a minor, and Alberto Rodríguez were not the subject of the criminal investigation. Hence, any claim to recover money damages under the FTCA for the alleged "intromission into the privacy of her home" is dismissed, as they were not the subject of the criminal investigation, and are only claiming consequential damages as a result of the alleged "false arrest." They were clearly not the subject of any action by the federal agents. The statute requires that Juana and Alberto be the subject, by law enforcement agents, of an "assault, battery, false imprisonment, false arrest, abuse of process or malicious prosecution," not mere observers of one

who allegedly suffered an "assault, battery, false imprisonment, false arrest, abuse of process or malicious prosecution." Further, it appears that Juana and Alberto were at the premises at the time that the law enforcement agents had probable cause to incidentally search the house of Tomás Alberty Avilés, the house where the stolen goods were being unloaded, or at the house of Tomás Alberty Orona, one of the individuals wherein there was also probable cause to search. Hence, they cannot claim any cause of action under the FTCA. Juana and Alberto Rodríguez, through their representatives, shall show cause in writing by **September 14, 2009,** whether Juana and Alberto have any claim, if any, under the FTCA.

### 6. Miriam Rodríguez:

Miriam Rodríguez was also exempt under the FTCA, as she claims damages for merely observing the alleged "false arrest" of others. But this "false arrest" is exempt under the law as a cause of action, 28 U.S.C. § 2680(h), as the federal officers had probable cause to arrest, and search the property, if necessary. Further, and most critical, she was not the subject, by law enforcement agents, of an "assault, battery, false imprisonment, false arrest, abuse of process or malicious prosecution." She was a mere observer of an alleged victim of an alleged "false arrest." Miriam Rodríguez shall show cause in writing by **September 14, 2009,** whether she has a claim for false arrest.

### 7. Sasha Padilla Sierra:

Sasha Padilla Sierra was pregnant at the time. She was the daughter in law of Tomás Alberty Avilés. Ms. Padilla Sierra was not the subject of any action by any federal agent. She was a mere observer. Consequential damages as a mere observer of the events of an allegedly exempt

"false arrest," are exempt under 28 U.S.C. § 2680(h), as there was probable cause to arrest the persons, and search the house, that she allegedly saw being arrested. Most critical, as the other plaintiffs, she was not the subject of any law enforcement officer causing an "assault, battery, false imprisonment, false arrest, abuse of process or malicious prosecution" under the FTCA. She was a mere observer of an alleged victim of an alleged "false arrest." Ms. Padilla Sierra shall show cause in writing by **September 14, 2009,** whether she has a claim for false arrest.

### E. The Summary Judgment Standard.

■ Generally, "[s]ummary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. *See* Fed.R.Civ.P. 56(c); *Thompson v. Coca-Cola, Co.,* 522 F.3d 168, 175 (1st Cir.2008)." *Rodríguez Rivera, et al. v. Federico Trilla Regional Hospital of Carolina, et al.,* 532 F.3d 28, 30 (1st Cir.2008). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." (Citations omitted). *Id.* "A fact is material if it has the potential of determining the outcome of the litigation." *Id.,* citing *Maymi v. P.R. Ports Authority,* 515 F.3d 20, 25 (1st Cir.2008). "A trial worth issue exists if the evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is 'sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side.'" *Rojas-Ithier, et al. v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico, et al.,* 394 F.3d 40, 42–43 (1st Cir. 2005), citing *De-Jesús-Adorno v. Browning Ferris Indus.,* 160 F.3d 839, 841–42

(1st Cir.1998) (quoting *Nat'l Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995)). "The Court views the record on summary judgment in the light most favorable to the nonmovant." *Id.*

■ "The object of summary judgment is 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" *Dávila v. Corporación de Puerto Rico Para La Difusión Pública,* 498 F.3d 9, 12 (1st Cir.2007), citing from *Acosta v. Ames Dep't Stores, Inc.,* 386 F.3d 5, 7 (1st Cir.2004) (quoting *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992)). In *Dávila,* the Court held:

Thus, summary judgment is appropriate only when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

For this purpose, an issue is genuine if a reasonable jury could resolve the point in favor of the nonmoving party. *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir.2000). By like token, a fact is material if it has the potential to determine the outcome of the litigation. *See Calvi v. Knox County,* 470 F.3d 422, 426 (1st Cir.2006). Where, as here, the non-movant has the burden of proof and the evidence on one or more of the critical issues in the case "is ... not significantly probative, summary judgment may be granted." *Acosta,* 386 F.3d at 8 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

■ In *Jaques v. Town of Londonderry, et al.,* 54 Fed.Appx. 14, 16, (1st Cir.(N.H.), 2002), the Court held that "the mere presence of genuinely disputed facts does not pretermit summary judgment." "'To achieve that end, the dispute must relate to a *material* fact.' *Kearney v.*

*Town of Wareham,* 316 F.3d 18 (1st Cir. 2002)." *Id.* "A fact is material if-and only if—it has the capacity to affect the outcome of the case. (Citations omitted)." *Id.* In sum, "facts that are not critical to the proper adjudication of the summary judgment motion ... are not material." *Id.*

## F. Hearsay.

At the outset, the Court notes that each fact alleged by defendants are supported by sworn statements, which the Court accepts as true as to its content based upon personal knowledge and procedure only. References made by the declarant as to his communications with third parties, will constitute hearsay not admissible for summary judgment purposes. *See* Federal Rules of Evidence 801(c) ("Fed.R.Evid.").[8] *See also Dávila v. Corporación de Puerto Rico Para La Difusión Pública,* 498 F.3d 9, 17 (1st Cir.2007).

## Conclusion

For the reasons set forth above, qualified immunity is granted to the defendants, as to Tomás Alberty Avilés, Israel Alberty Avilés, and Tomás Alberty Orana (Docket No. 80).

As to plaintiffs, Tomás Alberty Orona, Virginia Solis de Alberty, Blanca I. Avilés Rodríguez, Juana Rodríguez Solis, Alberto L. Rodríguez Solis, Sasha Ivette Padilla Sierra, and Miriam Rodríguez Román, are to show cause by **September 14, 2009,** why their cause of action under the Federal Tort Claims Act shall not be dismissed.

Tomás and Israel Alberty Avilés shall show cause by **September 14, 2009,** as to why their claims under the FTCA should not be dismissed, as they were the subject of the criminal investigation, and their ar-

rests were executed under probable cause. Qualified immunity proceeds even if "the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson,* 129 S.Ct. at 815–816.

Tomás Alberty Avilés' damages claims under *Bivens* are dismissed, as the Court grants qualified immunity to the federal law enforcement officers.

All plaintiffs' claims under 42 U.S.C. § 1983, are also dismissed as they are nowhere pled in the complaint. *See Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Lastly, the record shows that all plaintiffs filed a Form 95–108, *Claim For Damages, Injury Or Death,* on or about August 18, 2005 with the Office of the Staff Judge Advocate at Fort Buchanan, Puerto Rico. The Court notes that none of the claims' copies filed by plaintiffs are stamped by the federal agency or office in which they were allegedly presented. *See Complaint* (Docket No. 1, ¶¶ 70–78). Plaintiffs allege that, as of this date, their claims have not been answered by the agency. *See Complaint* (Docket No. 1, ¶ 79).

Although this Court finds that there is no solid legal causes of action upon which a relief can be granted as to Tomás and Israel Alberty Avilés, as well as the other plaintiffs, the parties are granted twenty (20) days to complete the discovery. Jury trial is scheduled for **September 28, 2009 at 9:30 a.m.,** unless the qualified immunity issue is timely appealed prior thereto by plaintiffs or defendants.

---

**8.** Fed.R.Evid. 801(c), provides in its relevant part:

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

A Pretrial Conference is scheduled for **September 18, 2009 at 8:00 a.m.**

Plaintiffs, Tomás Alberty Orana, Virginia Solis de Alberty, Blanca I. Avilés Rodríguez, Juana Rodríguez, Alberto L. Rodríguez, Sasha Ivette Padilla Sierra, and Miriam Rodríguez Román, shall show cause in writing by **September 14, 2009,** why this case shall not be dismissed, as they did not suffer a search and seizure constitutional violation nor a false arrest caused by a federal official, and were not allegedly involved in the criminal investigation, or if the property of Tomás Alberty Orona was searched, there was probable cause, as the stolen goods were eventually transferred to his property.

The United States is to respond to all the show cause orders by **September 17, 2009.**

No continuances are to be granted except by a timely appeal to the Circuit Court, as to qualified immunity defense, involving a filing of a mere "notice of appeal."

IT IS SO ORDERED.