**Vicente GONZALEZ, Linnete Munoz, and their conjugal partnership, Victor Franco, Margarita Rodriguez, and their conjugal partnership, Plaintiff(s),**

v.

**Octavio OTERO, Rogelio Velez, Edwin Sepulveda, Jorge Quinones, Berta Santiago, James Adamski, Raymond Johnson, Stephen Ackman, Mark Nozaki, Billy Higgason, Ramon Roman, Gunner Pederson, Defendant(s).**

Civil No. 08–1330(DRD)

United States District Court, D. Puerto Rico.

Signed March 28, 2016

Nicolas Nogueras–Cartagena, Nicolas Nogueras Law Offices, Jely A. Cedeno–Richiez, San Juan, PR, for Plaintiffs.

Isabel Munoz–Acosta, Lisa E. Bhatia–Gautier, United States Attorneys Office, District of Puerto Rico, San Juan, PR, for Defendants.

## OPINION AND ORDER

DANIEL R. DOMINGUEZ, United States District Judge

Pending before the Court are the following motions: (a) *Motion Requesting Leave for Summons by Publication,* Docket No. 62; (b) *Notice to the Court Regarding Plaintiffs' Request for Service of Publication* filed by the federal officers and defendants Jorge Quinones;[1] Berta Santiago; Raymond Johnson and Rogelio Vélez (hereinafter defendants "Quinones; Santiago; Johnson and Velez"), Docket No. 63; (c) *Motion to Dismiss and Memorandum in Support and Notice of Substitution of Parties,* filed by defendants, Quinones; Santiago; Johnson, and Velez, Docket No. 64; (d) *Motion to Supplement Motion to Dismiss,* Docket No. 66; (e) *Opposition to Motion to Dismiss,* filed by plaintiffs, Docket No. 71; (f) *Defendants' Reply to Plaintiffs Opposition to Motion to Dismiss,* Docket No. 78; (g) *Motion to Dismiss for Lack of Personal Jurisdiction and Motion for Joinder of Defendants' Motion to Dismiss (Docket 64) and Defendants (Docket 78),* filed by defendant Gunnar Pederson ("Pederson"), Docket No. 82; (h) *Plaintiffs' Opposition to Defendant Gunnar Pederson's Motion to Dismiss,* Docket No. 83; (I) *Motion to Supplement Motion in Response to Defendants' Motion to Dismiss under Rule 12(b)(6)* filed by plaintiffs, Docket No. 93; and (j) *Second Motion to Supplement Response to Motion to Dismiss* filed by plaintiffs, Docket No. 94.

In addition, the parties have filed several motions, notwithstanding the fact that the Court specifically ordered that "the stay will remain in effect until the Court entertains the *Motion to Dismiss for Lack of Personal Jurisdiction and Motion for Joinder of Defendants' Motion to Dismiss (Docket 64) and Defendants' (Docket 78).* See *Minutes* of January 31, 2011, Docket No. 107.[2]

For the reasons set forth below, defendants' *Motion to Dismiss and Memorandum in Support and Notice of Substitution of Parties,* Docket No. 64; *Supplemental Motion to Dismiss,* Docket No. 66; and, defendants' *Reply to Plaintiffs' Opposition,* Docket No. 78, are granted.

## Introduction

This action was originally filed on March 18, 2008, against all defendants in their official and personal capacity. *See* Docket

---

1. The record shows that, on November 9, 2009, plaintiffs filed a *Notice of Partial Voluntary* Dismissal of Claims against Jorge Quiñones and James Adamski with Prejudice, Docket No. 72. In said Notice, the plaintiffs also conceded "that no First Amendment Claims may lie on these facts and hereby voluntarily dismiss the same." Hence, the Court will not include defendants Jorge Quiñones and James Adamski, as well as any First Amendment claims, in the legal analysis set forth herein.

2. The motions that are pending before the Court, but contingent on the Court's final disposition on the defendants' motion to dismiss, are: (a) *Motion for Partial Summary Judgment* filed by plaintiffs, Docket No. 95; (b) *Motion to Tender Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment and Exhibits in Support of Statement of Uncontested Facts,* Docket No. 96; (c) *Second Motion to Tender Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment and Exhibits in Support of Statement of Uncontested Facts,* Docket No. 97; (d) *Motion to Strike* filed by the defendants, Docket No. 98; (e) *Response in Opposition to Motion to Strike* filed by plaintiffs, Docket No. 99.

No. 1. However, prior to the commencement of the instant action both plaintiffs Gonzalez and Franco had initiated administrative proceedings with the Department of the Army of the United States ("Army"), which the Court deems critical in the factual and legal analysis of the instant complaint. This matter will be thoroughly discussed in more detail *infra*, the Court notes in a nutshell that neither Franco or Gonzalez exhausted their administrative procedures with the Agency and/or the Commission. Instead, plaintiffs opted to file the instant complaint ten months after the Army's final decision was rendered.[3]

After the filing of the instant complaint on March 18, 2008, plaintiffs filed on September 1, 2009, a third amended complaint against the same defendants but sue them in their personal capacity only, and added a claim under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), entitled "The Conspiracy To Impede Gonzalez's Appointment as Director Of The Directorate of Emergency Services, Hereinafter Referred To As DES, In Fort Buchanan." *See* Docket No. 61–2.

On November 9, 2009, plaintiffs filed a *Notice of Partial Voluntary Dismissal of Claims Against Jorge Quiñones and James Adamski With Prejudice*, Docket No. 72. In addition, plaintiffs moved for the dismissal of all claims related to the First Amendment of the United States Constitution, as the "plaintiffs have conceded that no First Amendment Claims may lie on these facts and hereby voluntarily dismiss the same." *See* Docket No. 72. Hence, as of November 9, 2009, the

only remaining defendants under the [Third] *Amended Complaint*, Docket No. 61 are, Octavio Otero, Rogelio Velez, Edwin Sepulveda, Berta Santiago, Raymond Johnson, Stephen Ackman, Mark Nozaki, Billy Higgason, Ramon Roman, Gunner Pederson, and the United States of America.

As of this date, however, the only remaining defendants pending in this case, who have been sued in their personal capacity and have been properly served with service of process [regardless of whether the service of process was timely or not], are four defendants, to wit, Rogelio Velez; Berta Santiago; Raymond Johnson; and, Gunner Pederson.[4] Lastly, according to the record of the Court, the United States is not a party in this case, as the United States of America was never served with service of process. The record shows that summons were issued by the Clerk's Office to serve the United States through the United States Attorney General, the United States Attorney for the District of Puerto Rico and the United States Army Garrison. *See* Docket No. 18. However, there is no evidence in the record of the Court that the summons issued were indeed properly served upon the United States, as they were not returned executed.

Before proceeding any further it is important to enumerate certain key facts and their chronology which are critical to the time frame of the facts in the instant case.

1. On April 3, 2007; COL Ackman provided plaintiff Vicente Gonzalez ("Gonzalez") a letter placing him on

---

3. The record shows that, prior to the filing of the instant proceeding before the District Court, plaintiffs Vicente Gonzalez and Victor Franco sought advice from the EEO Office. However, both plaintiffs failed to exhaust the administrative remedies once a claim for employment discrimination was filed and denied

by the EEO Office. *See* further discussion *infra*.

4. Defendants Rogelio Vélez; Berta Santiago, and Raymond Johnson were served on May 4, 2008. *See* Docket No. 10. Defendant Gunner Pederson was served on November 18, 2008. *See* Docket No. 79.

Administrative Leave pending the outcome of the criminal investigation being conducted against Gonzalez. *See* Third Amended Complaint, Docket No. 61, ¶ 89[5] and Docket No. 66–2, page 2. On April 12, 2007, plaintiff Gonzalez contacted the EEO Office, and the initial interview was conducted on even date, that is, April 12, 2007, Reference No. ARFTBUCH07APR01261. *See* Docket No. 66–4, pages 2–9.

2. On April 5, 2007, COL Ackman provided plaintiff Victor Franco ("Franco") a similar letter placing him on administrative leave pending the outcome of the criminal investigation. *See* Third Amended Complaint, Docket No. 61, ¶ 91, and Docket No. 66–5, page 2. On April 13, 2007, plaintiff Franco contacted the EEO Office, and the initial interview was conducted on the same date, that is, April 13, 2007. Reference No. ARFTBUCH07APR01281. *See* Docket No. 66–7.

3. On April 18, 2007, Special Agent Higgason and Special Agent Roman informed plaintiff Gonzalez that he was being investigated for possible criminal charges of Conspiracy (18 U.S.C. § 371); Graft (18 U.SC. § 208); False Statements (18 U.S.C. § 1001); Obstruction of Justice (18 U.S.C. § 1506), and Theft of Public Property (18 U.S.C. § 641). *See* Third Amended Complaint, Docket No. 61, ¶¶ 95–97.

4. On May 17, 2007, the EEO Counselor hand delivered separate Memorandums to both plaintiffs, Gonzalez and Franco. *See* Docket entries No. 66–4, and 66–7.

5. On July 9, 2007, plaintiff Franco was reinstated to his position as an Investigator with the Department of Army Civilian Police ("DACP"). *See* Third Amended Complaint, Docket No. 61, ¶ 101.

6. On or about October 11, 2007, Special Assistant U.S. Attorney Javier Calderon ("SAUSA Calderon"), informed plaintiff Gonzalez that there was no basis to conclude that plaintiffs Gonzalez or Franco had committed the listed criminal offenses. *See* Third Amended Complaint, Docket No. 61, ¶ 102.

7. On November 11, 2007, the Criminal Investigation Division ("CID") issued a final report closing the investigation because there was no evidence to prove or disprove Gonzalez' participation in illegal activities. *See* Third Amended Complaint, Docket No. 61, ¶¶ 120–121.

8. On February 20, 2008, plaintiff Gonzalez received an official memorandum issued by Evelyn Rivera, Security Manager for Fort Buchanan ("FBPR") stating that his security clearance had been suspended based on information that stemmed from the pending criminal investigation. *See* Third Amended Complaint, Docket No. 61, ¶ 104. On that same date, defendant Pederson issued a memorandum to plaintiff Gonzalez detailing him to the Directorate of Human Services while his security clearance was suspended. *Id.*

5. Plaintiff Gonzalez requested counseling to an EEO Official on April 7, 2007, and was interviewed on the same date. Mr. Gonzalez claimed that he was placed on Administrative Leave with Pay for an undetermined amount of time while an investigation was being conducted, *albeit*, no details of said investigation were given to plaintiff Gonzalez. *See* Docket No. 66–4, page 6.

9. April 23, 2008, and after a review of the files of the pending criminal investigation, Garrison Commander Ackman restored plaintiff Gonzalez his security clearance. *See* Third Amended Complaint, Docket No. 61, ¶ 106. Plaintiff Gonzalez was allowed to return to his normal duties as the Chief of Police at Fort Buchanan.

10. It is important to note, that both plaintiffs, Gonzalez and Franco were placed on administrative leave with pay until they were cleared and restored to their normal duties. Hence, plaintiffs Gonzalez and Franco suffered no economic damages, as they were being paid while the investigation was being conducted. **"Therefore, no employment harm as it relates to your employment has occurred."** (Emphasis ours). *See* Army's Final Decision issued on the Complaint filed by plaintiff Franco, dated May 31, 2007, Docket No. 66–9, page 3.[6] "EEOC has asserted that complainant [Franco] that continued to be paid while on leave and that, under certain circumstances, **placement on paid administrative leave for brief periods would not result in harm sufficient to state a justiciable claim."** *Id.* "Therefore, in accordance with applicable regulations, Title 29, Code of Federal Regulations, Sections 1614.107(a)(1), **this claim is dismissed for failure to state a claim."** *Id.* (Emphasis ours).

11. The record shows that the instant complaint was filed on March 18, 2008, that is, after the 30 day period to appeal the Agency's Final Decision issued on May 31, 2007 on plaintiff Franco's discrimination complaint had elapsed and/or the 30 day from counsel's receipt of the Final Decision had also elapsed. In sum, the record is silent as to whether plaintiff Franco timely appealed the Army's Final Decision of May 31, 2007, to the Commission or what action, if any, Franco followed after the Agency's Final Decision was issued. *See* Docket No. 66–9.

12. Likewise, the record is silent as to whether plaintiff Gonzalez filed a formal discrimination complaint, or what action, if any, Gonzalez followed after the Agency's Memorandum dated May 17, 2007 was issued.

13. The record shows that plaintiff Franco was reinstated to his position as Investigator with the DACP, on July 9, 2007, and plaintiff Gonzalez was reinstated on April 23, 2008. *See* Docket No. 61.

14. Both defendants, Octavio Otero ("Otero") and Rogelio Vélez ("Velez") worked under the authority of plaintiff González, who was the

**6.** The Army's Final Agency Decision dated May 31, 2007, was received by plaintiff Franco on June 11, 2007. *See* Docket No. 66–9, page 10. In the Final Decision, the EEO Director, Ms. Magda E. Figueroa, advised Plaintiff Franco of his right to appeal to the Commission and the procedure to be followed. *See* Docket No. 66–9, pages 4–5, Part 1614.401(a) and Part 1614.402(a). Plaintiff Franco had 30 calendar days "of receipt of the dismissal, final action or decision" to file an appeal. If the complainant is represented by counsel, then the 30 calendar days will be calculated" from the receipt of the required document by the attorney." *See* Docket No. 66–9, page 4, Part 1614.402(b). "In all other instances, the time within which to appeal shall be calculated from the receipt of the required document by the complainant." *Id.* In any event, It appears from the record that plaintiff Franco failed to appeal the Army's final decision of May 31, 2007 to the Commission, as directed in said decision.

Chief of the DACP at that time. Based on their allegations, the United States Attorney's Office for the District of Puerto Rico referred the matter for investigation by the Army's Criminal Investigation Division ("CID"). Special Agent Billy Higgason and Special Agent Ramón Román were assigned to the CID investigation. *See* Docket No. 61.

15. Within a week of initiating the criminal investigation, Special Agents Higgason and Román gave an initial briefing to the assigned Assistant United States Attorney ("AUSA"), the Fort Buchanan Deputy Garrison Manager, Defendant Pederson, and the Garrison Commander, Defendant COL Ackman, summarizing the progress of the investigation. *See* Docket No. 61.

16. The instant action ensued on March 18, 2008.

Based on these premises, the Court now proceeds with the analysis of the instant case.

**Factual and Procedural Background**

Plaintiff Vicente González ("Gonzalez") is the civilian Chief of Police within the Public Safety Office at Fort Buchanan, Puerto Rico. Plaintiff Victor Franco ("Franco") is a civilian Criminal Investigator within the same office. Fort Buchanan is a military installation operated by the United States Department of the Army (hereinafter the "Army").

On March 28, 2007, defendants Otero and Vélez reported that plaintiff González had been misusing his position at the Department of the Army Civilian Police ("DACP") for personal gain. Defendant Otero also claimed that plaintiff Franco used his security clearance and access for personal or inappropriate reasons. At the time of the allegations, defendant Otero was a Criminal Investigator for the DACP and defendant Vélez was Otero's immediate supervisor. *See* Docket No. 61.

According to the record, the investigation against plaintiffs Gonzalez and Franco was initiated at the end of March 2007, and ended on or about October 11, 2007 when the Assistant United States Attorney assigned to the case determined that there was no basis to conclude that either plaintiffs Gonzalez or Franco had committed the listed criminal offenses. On November 11, 2007, the CID issued a final report closing the investigation because there was insufficient evidence to prove or disprove Gonzalez' participation in illegal activities. *See* Docket No. 61.

The record further shows that plaintiff Franco was reinstated to his position as Investigator with the DACP, on July 9, 2007, and plaintiff Gonzalez was reinstated on April 23, 2008. *See* Docket No. 61.

On April 27, 2009, the Hon. Rosa Emilia Rodriguez Velez, United States Attorney for the District of Puerto Rico, issued a *Certification of Scope of Employment* related to the instant complaint.[7] *See* Docket No. 64–3.

---

7. The *Certification of Scope of Employment*, Docket No. 64–3, reads as follows:

I, Rosa Emilia Rodriguez Velez, United States Attorney for the District of Puerto Rico, acting pursuant to the provisions of 28 U.S.C. § 2679(d)(2), and by virtue of te authority vested in me by the Appendix to 18 C.F.R. § 15.3 (1991), hereby certify that I have investigated the circumstances of the incident upon which the plaintiff's claim is based. On the basis of information now available with respect to the allegations set forth at Plaintiff's Complaint, I hereby certify that Federal Codefendants Jorge Quinones, Berta Santiago, Raymond Johnson and Rogelio Velez were acting within the scope of their federal employment with the U.S. Army, Garrison Fort Buchanan, agency of the United States of America at the time of the incident which gave rise to the above-entitled action.

Notwithstanding, a more detailed account of plaintiffs Gonzalez and Franco follows.

### Vicente Gonzalez

On April 3, 2007, COL Ackman provided plaintiff González a letter placing him on paid administrative leave pending the outcome of the criminal investigation. *See* Docket No. 66–2. On April 12, 2007, plaintiff Gonzalez contacted an EEO Official, and was interviewed in person on the same date, and alleged "disparate treatment due to National Origin and Race," at the time he was placed on Administrative Leave, Reference No. ARFTBUCH07APR–1261. *See* Docket No. 66–4, page 6. On April 18, 2007, Special Agent Higgason and Special Agent Román informed Plaintiff González that he was being investigated for possible criminal charges of Conspiracy (18 U.S.C. § 371), Graft (18 U.S.C. § 208), False Statements (18 U.S.C. § 1001), Obstruction of Justice (18 U.S.C. § 1506), and Theft of Public Property (18 U.S.C. § 641). *See* Docket No. 61.

On May 17, 2007, plaintiff Gonzalez was hand delivered a Memorandum from Mara Clemente, EEO Counselor. *See* Docket No. 66–4, pages 2–4. The EEO Counselor advised Gonzalez during his final interview that "if you believe that you have been discriminated against on the basis of race, color, religion, sex, national origin, age, mental/physical disability and/or in reprisal for participation in protected EEO activity or opposition to prohibited discrimination, you have the right to file a formal complaint of discrimination within *15 calendar days* of receipt of this notice." (Emphasis in the original). *Id.* The record, however, is silent as to whether plaintiff Gonzalez indeed filed a formal complaint of discrimination. Plaintiff Gonzalez

Dated: 4/27/09 [Signed] Rosa Emilia Rodriguez Velez, United States Attorney

was allowed to return to his normal duties on April 23, 2008.[8]

As part of plaintiff Gonzalez' EEO counseling procedure, several witnesses were interviewed, to wit:

a. Mr. James Adamski was interviewed on April 16, 2007. He explained that "he signed the letter that placed Mr. Gonzalez on Admin[istrative] Leave with Pay was because that's what he was intrusted to do by his supervisor, Mr. Pederson." *See* Docket No. 66–4, page 8. Mr. Adamski further stated "that no factor, to include his [Gonzalez] national origin and race, was taken into consideration when making such decision." *Id.* "Mr. Adamski stated that the reason why they [Gonzalez and Franco] were put under Admin[istrative] Leave was due to the sensitivity of their positions and the complexity of the case at hand and not because of their national origin." *Id.*

b. Fire Chief Raymond Johnson was interviewed on April 25, 2007. Fire Chief Johnson testified "that he has never heard or seen any action from Mr. Adamski that would indicate that he was making decisions based on National Origin or Race." *See* Docket No. 66–4, page 8. "In reference to the allegations that Fire Chief was put in charge over the Chief of Police, Fire Chief Johnson stated that the only reason why he was put in charge is because the Chief of Police was on Annual Leave at the time." *Id.* The report further shows Fire Chief Johnson's relevant

8. The Court reiterates, that plaintiff Gonzalez was on Administrative Leave with pay during this period of time, that is, April 3, 2007 to April 23, 2008.

information: National Origin: USA and Race: African–American. *Id.*

c. Capt. Rogelio Velez was interviewed on May 7, 2007. Capt. Velez was the Acting Chief of Police. "He states that he had no knowledge of the reasons why Chief V. Gonzalez was put on Admin[istrative] Leave with Pay and he also states that he has not heard or seen any action from Mr. James Adamski that would indicate that he was making any decisions based on National Origin and/or Race." *See* Docket No. 66–4, page 8. The report further shows Capt. Velez' relevant information: National Origin: Puerto Rico and Race: Hispanic. *Id.*

d. Mr. Ramon Peluyera, Physical Security and whose office is located next to Mr. Adamski's office, was interviewed on April 24, 2007. Mr. Peluyera stated "that there were some differential treatment for some employees however he could not determine if to be based on Race and/or National Origin." *See* Docket No. 66–4, page 8. Mr. Peluyera further stated that "there were employees that were given preferential treatment and that it was obvious the personal favoritism for some employees not none falling under the EEO basis were identified by the witness. The report further shows Mr. Peluyera's relevant information: National Origin: Puerto Rico and Race: Hispanic.

e. Mr. Victor Quinones, Supervisory Physical Security, and whose office is located in the same building of Mr. Adamski's office, was interviewed on May 17, 2007. Mr. Quinones stated that" there was some differential treatment for some employees however he couldn't deter-

mine it to be based on race and/or National Origin." *See* Docket No. 66–4, page 8. Mr. Quinones further stated "that there were employees that were given preferential treatment and that it was obvious the personal favoritism for some employees but no EEO basis could be identified by the witness." *Id.* The report further shows Mr. Quinones' relevant information: National Origin: Puerto Rico and Race: Hispanic. *Id.*

In sum, all the testimonies of the interviewed witnesses were consistent in stating that, regardless of whether or not there was preferential treatment amongst certain employees, said treatment, if any, is not related to National Origin and/or Race of plaintiffs herein.

On May 17, 2007, plaintiff Gonzalez was hand delivered a Memorandum dated May 17, 2007, Subject: Notice of Right to File a Formal Complaint of Discrimination after Completion of Traditional EEO Counseling, Reference Doc# ARFT-BUCH07APR01261. *See* Docket No. 66–4, pages 2–9. Plaintiff Gonzalez was advised of his right to file a formal complaint within *15 calendar days* of receipt of the notice, that is, on or before June 1, 2007. The Court notes that the record is silent as to whether plaintiff Gonzalez indeed filed a formal complaint or what procedure, if any, was followed by Gonzalez. Plaintiff Gonzalez was allowed to return to his normal duties as Chief of Police at Fort Buchanan, on April 23, 2008.[9]

### Victor Franco

Two days later, on April 5, 2007, COL Ackman also placed plaintiff Franco on paid administrative leave. *See* Docket No. 66–5. On April 13, 2007, Franco contacted the EEO Office, and the initial interview

---

**9.** The Court notes that the instant complaint was filed on March 18, 2008.

was on the same date, that is, April 13, 2007. *See* Docket No. 66–7.

During the initial interview held on or about April 13, 2007, plaintiff Franco alleged "disparate treatment due to his National Origin and Race when he was placed on Admin[istrative] Leave with pay for being under investigation." *See* Docket No. 66–7, page 8. Plaintiff Franco further states that "he has not been told why is he under investigation nor has he being interviewed by the police or CID in any issue to this date." *Id.* "[Franco] states that he was placed under Admin[istrative] Leave and the rumor in the streets is that he is suspended pending termination and that is ruining his reputation as an investigator and as a Command sergeant Major in the Army." *Id.*

As part of plaintiff Franco's EEO counseling procedure, several witnesses were interviewed thereafter, to wit, Mr. James Adamski, Director of the Directorate of Emergency Services ("DES") Fort Buchanan Puerto Rico; Fire Chief Raymond Johnson; Capt. Rogelio Velez, Acting Chief of Police; Mr. Ramon Peluyera, and Mr. Jorge Quiñones. *See* Docket No. 66–7, page 8. The Court notes that in the *EEO Counselor's Report*, the EEO Counselor included the following references as to the witnesses interviewed: (a) Rogelio Velez; (b) Fire Chief Raymond L. Johnson; (c) Mr. Ramon Peluyera; and, (d) Mr. Jorge Quiñones. The following is a summary of the witnesses' testimonies, *albeit* most of their testimonies are consistently the same.

 a. Mr. Jorge Quinones, and plaintiff Franco's immediate supervisor was interviewed on April 16, 2007. Mr. Quinones stated that he received a telephone call from Mr. Adamski asking him to go to his office with Mr. Franco, but never indicated why. *See* Docket No. 66–7, page 8. Mr. Quinones further stated that "he

didn't know what was going on until he reached the office [Mr. Adamski] and Mr. Franco was served with the letter [placing Mr. Franco on Admin[istrative] Leave with Pay]." *Id.* Mr. Quinones stated that "he has never heard or seen anything that would indicate that Mr. Adamski has made or is making decisions based on National Origin and/or Race. *Id.* "He also states that he doesn't know the reason why they [Gonzalez and Franco] were put in Admin[istrative] Leave instead of re-assigning them to other duties." *Id.* The report further shows Mr. Quinones' relevant information: National Origin: New York and Race: Hispanic. *Id.*

 b. Mr. James Adamski was interviewed on April 16, 2007. The record shows that Mr. Adamski was the Director of the Directorate Emergency Services ("DES") of Fort Buchanan, Puerto Rico until June 2007. *See* Docket No. 66–7, page 8. Mr. Adamski testified that he did not have any knowledge of the alleged investigation until he was informed by his supervisor that plaintiff Vicente Gonzalez, Chief of Police, Fort Buchanan Puerto Rico was being placed on Administrative Leave with Pay during an investigation conducted by an outside agency. *See* Docket No. 66–7, page 8. Mr. Adamski further testified "that no factor, to include his [Franco] national origin and race, was taken in consideration when making such decision." *Id.* Mr. Adamski stated that the CID ("Criminal Investigation Division") was set to interview Franco on April 16, 2007. "Mr. Adamski stated that the reason why they were put under Admin[istrative] Leave was due to the sensitivity of their positions and the complexity of the case at hand

and not because of their national origin." *Id.*

c. Fire Chief Raymond Johnson was interviewed on April 25, 2007. "Fire Chief Johnson state[d] that he has never heard or seen any action from Mr. Adamski that would indicate that he was making decisions based on National Origin or Race." *See* Docket No. 66–7, page 8. As to why Fire Chief Johnson was placed as Chief of Police, Johnson explained that "the only reason why he was put in charge is because the Chief of Police was on Annual Leave at the time." *Id.* The report further shows Fire Chief Johnson's relevant information: National Origin: USA Race and Race: African–American. *Id.*

d. On May 7, 2007, Capt. Velez, Acting Chief of Police, was interviewed. "He states that he had no knowledge of the reason why Mr. Victor Franco was put in Admin[istrative] Leave with Pay and he also states that he has not heard or seen any action from Mr. James Adamski that would indicate that he was making any decisions based on National Origin and/or Race. *See* Docket No. 66–7, page 8. The report further shows Capt. Velez' relevant information: National Origin: Puerto Rico and Race: Hispanic. *Id.*

e. Mr. Ramon Peluyera, whose office is next to Mr. Adamski's office, was interviewed on April 16, 2007. "He stated that there was some differential treatment for some employees however he couldn't determine it to be based on Race and/or National Origin." *See* Docket No. 66–7, page 8. "He states that there was employees that were given preferential treatment and that it was obvious the personal favoritism for some em-

ployees not none falling under the EEO basis were identified." *Id.*

On May 17, 2007, plaintiff Franco was hand delivered a Memorandum entitled "Notice of Right to File a Formal Complaint of Discrimination after Completion of Traditional EEO Counseling, Reference Doc# ARFTBUCH07APR01281." *See* Docket No. 66–7. Plaintiff Franco was advised that after completion of the EEO Counseling, he had a right to file a complaint if he "believe[s] that [he] has been discriminated against on the basis of race, color, religion, sex, national origin, age, mental/physical disability and/or reprisal for participation in protected EEO activity or opposition to prohibited discrimination, you have the right to file a formal complaint of discrimination within *15 calendar days* of receipt of this notice." *See* Docket No. 66–7, page 2. "Please be advice [sic] that your client can file a complaint only on those issues that he [Franco] was counseled on." *Id.* (Emphasis in the original). Instructions for filing the timely formal complaint were included in Memorandum of May 17, 2007, which was signed by Ms. Mara Clemente, EEO Counselor. *See* Docket No. 66–7.

On May 24, 2007, plaintiff Franco filed and equal employment opportunity complaint, and the Army rendered its final decision on May 31, 2007, denying the discrimination complaint on the grounds that the complaint failed to state a claim. *See* Docket No. 66–9, pages 2–10.

The Court notes, however, that between the initiation of the criminal investigation at the end of March 2007, and its conclusion on October 11, 2007, Special Agents Higgason and Román took the statements of dozens of witnesses concerning the criminal allegations. According to the plaintiffs, the large majority of the statements gathered by the criminal investiga-

tors did not corroborate the criminal allegations. *See* Docket No. 61.

On or about October 11, 2007, the Special Assistant U.S. Attorney reviewing the case determined there was no basis to conclude that either plaintiffs González or Franco had committed the listed criminal offenses. Then, on November 11, 2007, the CID issued a final report closing the investigation because there was insufficient evidence to prove or disprove Gonzalez's participation in illegal activities. *See* Docket No. 61.

On February 20, 2008, plaintiff González received an official memorandum issued by Evelyn Rivera, Security Manager for FBPR, stating his security clearance had been suspended based on information raised within the criminal investigation. That same day, the Deputy Garrison Manager, Defendant Pederson, issued a memorandum to González detailing him to the Directorate of Human Services while his security clearance was suspended. *See* Docket No. 61.

On April 23, 2008 the Garrison Commander restored plaintiff González's security clearance after a review of the files of the criminal investigation. Plaintiff González was therefore allowed to return to his normal duties as the Chief of Police at Fort Buchanan. *See* Docket No. 61.

### The Judicial Action

On March 18, 2008, plaintiffs Vincente González and Victor Franco jointly filed the instant complaint against twelve Army criminal investigators and supervisors, along with the Fort Buchanan Garrison Commander and his senior staff. Plaintiffs claim violations of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, as well as civil sections of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, when the Army investigators and supervisors criminally investigated the Plaintiffs

for misconduct. *See* Docket entries No. 1 and 64.

Plaintiffs also allege that the defendants exploited the criminal investigation against them in order to deprive them of employment because of plaintiffs' "Latino heritage and Puerto Rican nationality." *See* Docket No. 61. Furthermore, plaintiffs claim that defendants participated in a conspiracy to ensure that no Puerto Rican would be the Chief of the DACP or DES Director but rather someone willing to turn a blind eye to the corrupt affairs. *See* Docket No. 61.

Plaintiffs filed a [Second] Amended Complaint on May 2, 2008, Docket No. 7, and filed a [Third] Amended Complaint on September 1, 2009, Docket No. 61. Plaintiffs' Third Amended Complaint eliminated the claims against defendants in their official capacities but maintained suit against defendants in their personal capacities. *See* Docket No. 61 and the Minutes of August 25, 2009 filed under Docket No. 59.

On September 22, 2009, defendants filed a *Motion to Dismiss and Memorandum in Support and Notice of Substitution of Parties,* Docket No. 64, that claims plaintiffs' Third Amended Complaint, at heart, is an unexhausted employment discrimination suit disguised under *Bivens* and the Racketeer Influenced and Corrupt Organizations ("RICO") Act.

First, defendants' Motion to Dismiss asserts that plaintiffs have failed to state a plausible claim for relief needed to survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ. P.").

Second, defendants assert that eight named defendants were not served within 120 days of the complaint's filing in accordance with Fed. R. Civ. P 4(m) and should be dismissed from the suit. Though plaintiffs filed two motions on September 8 and 9, 2008, seeking permission to serve six of

the eight individuals by publication, this Court denied both motions on October 21, 2008, for failure to comply with Fed. R.Civ.P. 4(e)(1) and Puerto Rico Civil Rule 4.5. *See* Docket entries No. 31 and 32. Defendants assert that plaintiffs' Motion Requesting Leave for Summons by Publication filed on September 21, 2009, must be denied for failure to produce good cause as to why the 120 day requirement under Fed.R.Civ.P. 4(m) should be extended. *See* Docket No. 64.

Third, defendants assert that individuals Quiñones, Higgason, and Román were not accused of any personal misconduct and should be dismissed from the suit. *See* Docket No. 64.

Fourth, defendants allege that Otero, Santiago, Sepulveda, and Vélez were sued solely because they provided false witness testimony in a criminal investigation and are each entitled to absolute immunity from liability in this civil action for damages. *See* Docket No. 64.

Fifth, defendants claim that plaintiffs' pleadings may only be raised through the procedures and remedies afforded by the Civil Service Reform Act ("CSRA") and Title VII of the Civil Rights Act. The plaintiffs' failure to properly raise these allegations under exclusive remedies provided in the Acts precludes the constitutional allegations under *Bivens* and the allegations under the civil RICO statute. *See* Docket No. 64.

Sixth, defendants assert that they are each entitled to qualified immunity on plaintiffs' constitutional and civil RICO claims. *See* Docket No. 64.

Finally, plaintiffs lack standing to sue under the RICO Act, as plaintiffs' alleged RICO claims are insufficient. *See* Docket No. 64.

On September 29, 2009, defendants filed a Supplemental Motion to Dismiss that outlined plaintiffs' failure to exhaust administrative remedies. Defendants allege that plaintiff González sought counseling with the Equal Employment Opportunity Officer ("EEO") on April 12, 2007, and a Notice of Right to File a Formal Complaint of Discrimination was delivered to him on May 17, 2007. *See* Docket No. 66.

Plaintiff González failed to file a formal complaint with the EEO within 15 calendar days of the receipt of the notice even though he was advised of his right to do so. *See* Docket No. 66–4.

Plaintiff Franco also sought EEO counseling on April 13, 2007, and a Notice of Right to File a Formal Complaint of Discrimination was delivered to him on May 17, 2007. *See* Docket No. 66–7. Plaintiff Franco complied with the administrative procedure and filed a formal complaint with the EEO on May 24, 2007. *See* Docket No. 66–8. The Army issued a Final Agency Decision dated May 31, 2007, wherein the Agency denied Franco's formal complaint for failure to state a claim,[10]

10. The Agency held:
 Last, although the record shows that you are on administrative leave, the records also show that you are on administrative leave with pay. Meaning, that you are getting pay while an investigation is being conducted. Therefore, no employment harm as it relates to your employment has occurred. On the contrary, our record shows that you have not los[t] any pay during your absence from work, you are still an employee of the organization, under the same grade and salary as prior to the investigation and no adverse personnel action has been taken against you, instead you are on leave with pay while an investigation is being conducted. **EEOC has asserted that complainant that continued to be paid while on leave and that under certain circumstances, placement on paid administrative leave for brief periods would not result in harm sufficient to state a justifiable claim.** Therefore, in accordance with applicable regulations, Title 29, Code of Federal Regulations, Sections 1614.107(a)(1),

and advised plaintiff Franco of his right to appeal within 90 days, as well as the procedure to be followed. *See* Docket No. 66–9.

Lastly, the record shows that plaintiff Franco failed to appeal the Final Agency Decision within the specified 90 days even though he was aware of his right to do so. *See* Docket No. 66.

Plaintiffs filed an *Opposition to Motion to Dismiss,* Docket No. 71, followed by *Defendants' Reply to Plaintiffs' Opposition to Motion to Dismiss,* Docket No. 78.

Defendant Gunner Pederson filed a *Motion to Dismiss for Lack of Personal Jurisdiction and Motion for Joinder of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Motion for Joinder of Defendants' Motion to Dismiss (Docket 64) and Defendants' (Docket 78).* *See* Docket No. 82. Plaintiffs filed their opposition to defendant Pederson's motion to dismiss under Docket No. 83, as supplemented by responses filed under Docket entries No. 93, 94.[11] Defendants filed their oppositions under Docket entries No. 87, 92.

A Status Conference was held on January 31, 2011, and after considering the parties' positions, the Court decided to leave the stay in effect until the defendants' motions to dismiss are entertained, as there are issues of qualified immunity involved. *See* Docket No. 107.

---

this claim is dismissed for failure to state a claim. (Emphasis ours).

11. The Court notes that plaintiffs' and witnesses' Declarations under Penalty of Perjury 28 U.S.C. § 1746 are dated on or about September 2010 relating to events that took place at the end of March 2007. The Court further finds that said declarations are self-serving.

## Applicable Law and Discussion

### A. Motion to Dismiss Standards under Rule 12(b)(1), (b)(2) and (b)(6) of the Federal Rules of Civil Procedure.

#### 1. The Motion to Dismiss Standard under Fed.R.Civ.P. 12(b)(1).
##### *Dismissal of pleading for lack of jurisdiction over the subject matter.*

■ "When a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter." (citations omitted). *Deniz v. Municipality of Guaynabo,* 285 F.3d 142, 149 (1st Cir.2002). "After all, if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." 285 F.3d at 150.

■ Rule 12(b)(1) provides that a complaint will be dismissed if the court lacks subject matter jurisdiction. It is settled that the standard followed by the court when considering a dismissal request under Rule 12(b)(1), is that the court "must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiff's favor." *Viqueira v. First Bank,* 140 F.3d 12, 16 (1st Cir.1998), as restated in *Rolón v. Rafael Rosario & Associates, Inc., et al.,* 450 F.Supp.2d 153, 156 (D.P.R.2006). To determine jurisdiction under Rule 12(b)(1), the court may also review the evidence on record, including affidavits and depositions, as opposed to a dismissal request under any other

---

In a nutshell, plaintiffs allege in their opposition that this is not an issue of exhaustion of administrative remedies, but a RICO and *Bivens* action, as the defendants ultimate goal was to get plaintiffs Gonzalez and Franco fired. However, the RICO and *Bivens* claims are moot, as this action is time-barred.

subsection of Rule 12(b). Once the jurisdiction of the court is challenged by the defendant through a motion to dismiss, "it is plaintiff's burden to establish that the court has jurisdiction." *Rolón, supra.*

"Federal Courts are courts of limited jurisdiction," *Rolón,* 450 F.Supp.2d at 156, thus, "this Court has the responsibility to police the border of federal jurisdiction" *Spielman v. Genzyme Corp.,* 251 F.3d 1 (1st Cir.2001), and "must rigorously enforce the jurisdictional limits [standards] that Congress chooses, *Del Rosario Ortega v. Star Kist Foods,* 213 F.Supp.2d 84, 88 (D.P.R.2002)(citing *Coventry Sewage Associates v. Dworkin Realty Co.,* 71 F.3d 1, 3 (1st Cir.1995), as restated in *Rolón,* 450 F.Supp.2d at 156. *See also Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, *see Willy v. Coastal Corp.,* 503 U.S. 131, 136–137, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992) [and the collection of cases cited therein] );" *Rossello–Gonzalez v. Calderon–Serra,* 398 F.3d 1, 15 (1st Cir.2004)("Federal courts are courts of limited jurisdiction, and therefore must be certain that they have explicit authority to decide a case. *Bonas v. Town of North Smithfield,* 265 F.3d 69, 75 (1st Cir.2001) (citing *Irving v. United States,* 162 F.3d 154, 160 (1st Cir.1998) (*en banc*)). Thus, we subject the plaintiff's choice of a federal forum to careful scrutiny. *Id.*)"

A challenge under Rule 12(b)(1) constitutes a challenge to federal subject matter jurisdiction, which includes ripeness, mootness, sovereign immunity, and subject matter jurisdiction. *See Valentin v. Hospital Bella Vista,* 254 F.3d 358, 362–63 (1st Cir.2001). Where subject matter jurisdiction is challenged under 12(b)(1), the party asserting jurisdiction bears the burden of demonstrating the existence of federal subject matter jurisdiction. *See Skwira v. United States,* 344 F.3d 64, 71 (1st Cir.2003). *See also Murphy v. United States,* 45 F.3d 520, 522 (1st Cir.1995); *McCulloch v. Velez,* 364 F.3d 1, 5 (1st Cir.2004). In *Valentin v. Hospital Bella Vista,* 254 F.3d 358, 362–63 (1st Cir.2001), the Court held that Fed.R.Civ.P. 12(b)(1) is a "large umbrella, overspreading a variety of different types of challenges to subject matter jurisdiction," including ripeness, mootness, the existence of a federal question, diversity, and sovereign immunity.

In the instant case, plaintiffs Gonzalez and Franco initiated administrative proceedings with the EEO Office in April 2007, after both Gonzalez and Franco were placed on Administrative Leave with Pay on April 3, 2007 and April 5, 2007 respectively. Plaintiffs alleged in their claims discrimination for disparate treatment on their employments, as they have been discriminated against on grounds of National Origin and Race. Both Gonzalez and Franco were eventually reinstated in their positions, and no charges, reprisals or retaliation were taken against them.

The record shows that both plaintiffs, Gonzalez and Franco were hand delivered Memorandums dated May 17, 2007, wherein they were advised the administrative procedure to be followed if they indeed felt discriminated against on their employment on the "basis of National Origin, Race, Color, Religion, Sex, Age, Mental/Physical disability and/or reprisal for participating in protected EEO activity or opposition to prohibited discrimination ..." *See* Docket entries No. 66–4, page 2, and 66–7, page 2. As stated above, plaintiff Franco proceeded to file a timely formal complaint on May 24, 2007, and the same was denied on May 31, 2007, for failure to state a claim. *See* Docket No. 66–9, pages 2–10. The record is silent as to what other actions, if any,

were taken by plaintiff Franco. Likewise, the record is silent as to what actions, if any, were taken by plaintiff Gonzalez.

### *The complaint is time barred*

█ A review of the complaint shows that there are two procedural issues that are clear: (a) it appears that Franco failed to appeal the Army's Final Decision to the Commission within the next 30 days from receipt of the notice of dismissal of the complaint; and (b) the complaint filed on March 18, 2008 is time barred, *see Brown v. General Services Administration,* 425 U.S. 820, 825, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) ("In any event, the complainant [a federal employee] may file a civil action if, after 180 days from the filing of the charge or the appeal, the agency or Civil Service Commission has not take final·action"). *See also Epler v. F. Whitten Peters, Acting Secretary, Department of the Air Force, Agency,* 1998 WL 745739 (E.E.O.C. October 14, 1998); *Vincent v. Michael P.W. Stone, Secretary, Department of the Army, Agency,* 1990 WL 1112747 (E.E.O.C. July 13, 1990). In *Vincent,* the E.E.O.C. held:

> **Title VII remedies are limited to injunctive relief, reinstatement or hiring, backpay and other equitable relief.** Moreover, the central holding in *Brown* is that Title VII provides the exclusive remedies for claims of discrimination in federal employment. *Brown,* 425 U.S. at 835, 96 S.Ct. 1961. *Brown* does not stand for the proposition that compensatory damages are available to federal employees. *Boddy v. Dean,* 821 F.2d 346, 352 (6th Cir.1987). (Emphasis ours).

Our analysis follows.

The Agency issued a final decision dismissing the complaint for failure to state a claim on May 31, 2007. Plaintiff Franco failed to appeal the Agency's decision to the Commission, and further failed to file a civil action in the District Court within 180 days from the issuance of the final decision, that is, on or before November 27, 2007. Instead, plaintiffs Gonzalez and Franco opted to file a RICO and *Bivens* action on March 18, 2008 to include compensatory damages for employment discrimination, "enhanced" with RICO and *Bivens* allegations. *See Acevedo Perez v. United States Government,* 899 F.Supp.2d 90, 94–96 (D.P.R.2012); *affirmed,* 768 F.3d 51 (1st Cir.2014); *cert. denied,* ── U.S. ──, 135 S.Ct. 2871, 192 L.Ed.2d 898 (June 22, 2015). In *Acevedo Perez,* plaintiff accepted to be relocated but for personal reasons postponed his relocation, and after three extensions of time, he resigned voluntarily. Meanwhile, Mr. Acevedo remained on his regular job, working and receiving full payment. Mr. Acevedo filed an administrative ·claim with the Department of Homeland Security ("DHS"), followed by a civil complaint in the District Court. Eventually, Mr. Acevedo's complaint was dismissed as being time barred for one day. *Id.*

### 2. The Motion to Dismiss Standard under Fed.R.Civ.P. 12(b)(2).

### *Dismissal of pleading for lack of jurisdiction over the person.*

█ Rule 4(m) of the Federal Rules of Civil Procedure provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court, on motion or on its own after notice to the plaintiff, must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." In order for a claim to be dismissed, plaintiff must fail to demonstrate good cause.

█ However, courts have the discretion to either dismiss the case without prejudice or order that service be made within a specified time should a plaintiff

exhibit good cause. *Serrano v. Figueroa–Sancha*, 878 F.Supp.2d 301, 313 (D.P.R. 2012).

■ Defendants' *Motion to Dismiss*, Docket No. 66, alleges lack of jurisdiction because defendants Ackman, Adamski, Higgason, Nozaki, Otero, Pederson, Román, and Sepulveda were never served. Plaintiffs' *Motion Requesting Leave for Summons by Publication*, Docket No. 62, provides no inkling of explanation as to why plaintiffs failed to serve the eight named defendants. The Motion lists full and partial addresses for the eight defen-

dants but fails to give any explanation as to why they were not served.

Finding no good cause for plaintiffs' failure to comply with service of process in accordance with Fed.R.Civ.P. 4(m),[12] the Court hereby DENIES *Plaintiffs' Motion Requesting Leave for* Summons by Publication and GRANTS Defendants' Motion to Dismiss without prejudice the claims against defendants Ackman, Adamski, Higgason, Nozaki, Otero, Román, and Sepulveda.[13]

As of this date, according to the record of the Court, the only remaining defen-

12. Fed.R.Civ.P. 4(m) Time Limit for Service provides:

If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1) or to service of a notice under Rule 71.1(d)(3)(A).

13. In the instant case, the record shows the chronology of the summons issued; summons executed and plaintiffs' motions requesting service by publication:

March 17, 2008: **Docket No. 2:** Summons issued as to Jorge Quinones, Berta Santiago, James Adamski, Raymond Johnson, Stephen Ackman, Billy Higgason, Ramon Roman, Octavio Otero, Rogelio Velez, Edwin Sepulveda.
March 28, 2008: **Docket No. 5:** Summons issued as to Gunner Pederson.
May 07, 2008: **Docket No. 10:** Summons Returned Executed upon Jorge Quinones; Berta Santiago; Raymond Johnson; Rogelio Velez.
June 05, 2008: **Docket No. 11:** Motion for Issuance of Summons as to Mark Nozaki.
June 05, 2008 : **Docket No. 12:** Order, granting Docket No. 11.
June 10, 2008: **Docket No. 13:** Summons issued as to Mark Nozaki.
July 03, 2008: **Docket No. 16:** Motion submitting summons.

July 07, 2008: **Docket No. 17:** Order, granting Docket No. 16.
July 09, 2008: **Docket No. 18:** Summons issued as to U.S. Attorney General; U.S. District Attorney and U.S. Army Garrison.
July 29, 2008: **Docket No. 19:** Informative motion regarding summons. July 29, 2008: Docket No. 20: Order, noted Docket No. 19.
Aug. 4, 2008: **Docket No. 21:** Informative motion regarding Proof of Service
Aug. 5, 2008: **Docket No. 22:** Order, noted Docket No. 21.
Sept. 4, 2008: **Docket No. 24:** Summons returned unexecuted.
Sept. 8, 2008: **Docket No. 25:** Motion for service by publication
Sept. 9, 2008: **Docket No. 26:** Motion submitting summons
Oct. 21, 2008: **Docket No. 31:** Order, denying Docket No. 25 for failure to comply with Fed.R.Civ.P. 4(e)(1) and Puerto Rico Civil Rule 4.5
Oct. 21, 2008: **Docket No. 32:** Order, denying Docket No. 26 for failure to comply with Fed.R.Civ.P. 4(e)(1) and Puerto Rico Civil Rule 4.5
Sept. 1, 2009: **Docket No. 61:** Amended Complaint
Sept. 21, 2009: **Docket No. 62:** Motion for service by publication
Sept. 22, 2009: **Docket No. 65:** Motion for issuance of summons
Oct. 7, 2009: **Docket No. 67:** Order, granting Docket No. 65
Oct. 8, 2009: **Docket No. 68:** Summons issued as to Gunner Pederson
Nov. 25, 2009: **Docket No. 79:** Summons returned executed upon Gunner Pederson

dants pending in this case, who have been sued in their personal capacity and have been properly served with service of process [regardless of whether service of process was timely or not], are four defendants, to wit, Rogelio Velez (Supervisor of the DACP at Ft. Buchanan); Berta Santiago (Detective, Security Dept. of the Army and Air Force Exchange Services); Raymond Johnson (DES Director at Ft. Buchanan); and, Gunner Pederson (Deputy Garrison Commander at Ft. Buchanan).[14] *See* Docket No. 61, pages 3–4.

Lastly, according to the record of the Court, the United States is not a party in this case, as the United States of America was never served with service of process. The record shows that summons were issued by the Clerk's Office to serve the United States through the United States Attorney General, the United States Attorney for the District of Puerto Rico and the United States Army Garrison. *See* Docket No. 18. However, there is no evidence in the record of the Court that the summons issued were indeed properly served upon the United States, as they were not returned executed.

### 3. The Motion to Dismiss Standard under Fed.R.Civ.P. 12(b)(6)

*Dismissal of pleading for failure to state a claim upon relief can be granted.*

 Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See Ocasio–Hernandez v.*

*Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'") (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570, 127 S.Ct. 1955; *see e.g. Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

 When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, and *Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal*, 556 U.S. at 677–679, 129 S.Ct. 1937 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st

---

14. Defendants Rogelio Vélez; Berta Santiago, and Raymond Johnson were served on May 4, 2008. *See* Docket No. 10. Defendant Gunner Pederson was served on November 18, 2008. *See* Docket No. 79.

Cir.2009) (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937) (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

 Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira–Castillo,* 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679–80, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 567, 127 S.Ct. 1955). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio–Hernandez,* 640 F.3d at 12, (citing *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937).

The United States Court of Appeals for the First Circuit ("First Circuit") has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" . . . "even if seemingly incredible." *Sepulveda–Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 30 (1st

Cir.2010) (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955); *Ocasio–Hernandez,* 640 F.3d at 12 (citing *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937); *see Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); *see Ocasio–Hernandez,* 640 F.3d at 12 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepulveda–Villarini,* 628 F.3d at 29. *See also Soto–Torres v. Fraticelli,* 654 F.3d 153, 159 (1st Cir.2011). In *Soto–Torres,* the Court held:

> "[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they will fail to cross 'the line between the conclusory and the factual.'" *Penalbert–Rosa v. Fortuno–Burset,* 631 F.3d at 595 (quoting *Twombly,* 550 U.S. at 557 n. 5, 127 S.Ct. 1955).

> "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." [citing *Sepulveda–Villarini,* 628 F.3d at 29 (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937)(internal quotations omitted)] . . . .

> When a complaint pleads facts that "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" [citing *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955)] . . . .

■ However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert–Rosa v. Fortuno–Burset,* 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *see Iqbal,* 556 U.S. at 681, 129 S.Ct. 1937("To be clear, we do not reject [ ] bald allegations on the ground that they are unrealistic or nonsensical ... It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth"); *see Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.,* 621 F.3d 10, 14 (1st Cir.2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[ ] out rhetoric masquerading as litigation"). However, merely parroting the elements of a cause of action is insufficient. *Ocasio–Hernandez,* 640 F.3d at 12 (citing *Sanchez v. Pereira–Castillo,* 590 F.3d 31, 49 (1st Cir.2009)).

■ The First Circuit recently outlined two considerations for district courts to note when analyzing a motion to dismiss. *Garcia–Catalan v. United States,* 734 F.3d 100, 104 (1st Cir.2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under *Twombly–Iqbal. Id.* at 104. Second, district courts should accord "some latitude" in cases where "[a] material part of the information needed is likely to be within the defendant's control." *Id.* (more latitude is appropriate in cases where "it

cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury). (Internal citations and quotations omitted).

At the outset, a review of the third amended complaint is based on general conclusory allegations, and even speculative in nature. The Court finds, at first brush, that the allegations of the third amended complaint fail to meet the plausibility test set by *Twombly* and *Iqbal, supra.*

■ As to the First Amendment claims, plaintiffs withdrew them voluntarily for lack of legal foundation. *See* plaintiffs' *Opposition to Motion to Dismiss,* Docket No. 71. As to the Fourth Amendment claims, plaintiffs allege that "the investigation did authorize the defendants to issue an administrative leave [with pay][15] which caused the plaintiff[s] not to be considered for promotions as alleged in the complaint and also caused the plaintiff[s] to be excluded from [their] security clearances." *Id.* at page 6. The Court disagrees with plaintiffs, as they were both placed on Administrative Leave with Pay while the investigation was undergoing. Hence, the Court agrees with the Agency's EEO Final Decision that **"no employment harm as it related to your employment has occurred."** (Emphasis ours). *See* Docket No. 66–9, page 3. **"On the contrary, our records show that you have not lose any pay during your absence from work, you are still an employee of the organization, under the same grade and salary as prior to the investigation and no adverse personnel action has been taken against you; instead you are on leave with pay while an investigation is being conducted."** (Emphasis ours). *Id.* "EEOC has asserted that complainant

---

**15.** An important fact omitted by the plaintiffs.

that continued to be paid while on leave and that, under certain circumstances, placement on paid administrative leave for brief periods would not result in harm sufficient to state a justiciable claim." (Emphasis ours). *Id.* "**Therefore, in accordance with applicable regulations, Title 29, Code of Federal Regulations, Sections 1614.107(a)(1), this claim is dismissed for failure to state a claim.**" (Emphasis ours). *Id.*

After a careful review of the record, the Court adopts the Agency's Final Decision of May 31, 2007, and finds that the instant complaint be dismissed for failure to state a claim upon relief can be granted. The Court further finds that the plaintiffs suffered no economic harm, as they were both placed on Administrative Leave with Pay. Hence, the Court finds that plaintiffs are not entitled to compensatory damages, as they suffered "no employment harm," and plaintiffs failed to exhaust the administrative remedies. *Id.* Furthermore, plaintiffs are not entitled to the remedies provided by Title VII, such as, injunctive relief, backpay, reinstatement or hiring, and other equitable remedy, as an injunctive relief was never requested; backpay is moot, as plaintiffs never stopped receiving their salaries and benefits during the time the investigation was conducted; reinstatement, plaintiffs were never suspended from employment, and no other equitable relief was requested.

 Likewise, the findings and conclusion reached by the Agency confirms that there is no employment discrimination on the basis of National Origin and/or Race, or any other ground under Title VII, as they preserved the "same grade and salary as prior to the investigation, and no adverse personnel action" was taken against plaintiffs Gonzalez and Franco, "instead you [were] on leave with pay while [the] investigation [was] conducted." *See* Docket No. 66–9, page 3.

### B. Absolute Immunity for Witness Testimony

 "[A]ll witnesses, including those who give perjured testimony, are absolutely immune from civil suit under § 1983." *Reid v. New Hampshire,* 56 F.3d 332, 337 n. 11 (1st Cir.1995) (citing *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)). Defendants Otero, Santiago, Sepulveda, and Velez allegedly provided false testimony in the investigation against plaintiffs in order to "discredit and dishonor them." *See* Docket No. 61.

 Firstly, this allegation is pure speculation. Secondly, even though witnesses may be criminally prosecuted for false testimony, they have absolute immunity for their testimony in a civil suit seeking damages. *Briscoe,* 460 U.S. 325, 326, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Defendants Otero, Santiago, Sepulveda, and Velez are absolutely immune from Section 1983 damages for their testimony and are entitled to the dismissal of any such claims.

The Court further notes that several witnesses were interviewed during the EEO's investigation. Mr. Velez' testimony is consistent with the testimony of the other witnesses, who stated that any decision made regarding plaintiffs Gonzalez and Franco was not based on National Origin and/or Race. Indeed, the witnesses' testimonies just confirmed that there was no employment discrimination based on disparate treatment under Title VII.

 The defendants include a thorough analysis on the subjects of absolute immunity and RICO, which the Court adopts and incorporates herein:

While witnesses may be criminally prosecuted for false testimony, they have absolute immunity for their testimony in a civil suits seeking damages. *Briscoe v. LaHue,* 460 U.S. 325, 326, 103 S.Ct.

1108, 75 L.Ed.2d 96 (1983) (holding that § 1983 does not authorize a convicted person to assert a claim for damages against police officers for giving perjured testimony) *see also Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (stating that, for purposes of immunity law, there is no distinction between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials). Plaintiffs present no evidence that any witness—or anyone associated with the criminal investigation of them for that matter—have been investigated for, charged with, or convicted of perjury. Nonetheless, they are attempting to extract civil damages from these witnesses in retribution for their cooperation and testimony in the criminal investigation. If the criminal justice system is to function properly, such a suit must fail. Thus, the four defendants whose only alleged improper conduct was to provide allegedly false testimony in a criminal investigation should be dismissed.

. . .

Plaintiffs' Gonzalez and Franco's allegations are raised solely because after the investigation was completed, they were not prosecuted, while accepting that the investigation did not raise sufficient evidence to prove or disprove any criminal offense. (RICO Statement ¶ 206). This being the case, the Supreme Court has laid clear that "The Constitution does not guarantee that only the guilty will be arrested. If it did . . . a cause of action [would exist] for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433.

. . .

In order to sustain the grounds for a RICO claim, Plaintiffs. alleged predicate acts must show a continuity requirement. The Supreme Court in *H.J., Inc. v. Northwestern Bell*, 492 U.S. 229, 237, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), found that predicate acts extending over a few weeks or months do not satisfy the continuity requirement. Plaintiffs must also show clear signs of the activity threatening to continue into the future. *See Midwest Grinding v. Spitz*, 976 F.2d 1016, 1023 (7th Cir.1992). Following the Supreme Court's lead in *H.J., Inc., supra*, the First Circuit has also ruled that a plaintiff seeking to establish a pattern of racketeering activity, must establish that the "predicate acts are related and that they amount to or pose the threat of continued criminal activity." *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir.1997).

It is evident that Plaintiffs. Second Amended Complaint and RICO Statement fail to meet the mandatory requirements of a civil RICO claim. There is no showing of real predicate acts by each defendant, or of a continued threat of the alleged criminal activity. *See* Docket No. 64, pages 14 and 30–31.

## C. Constitutional Tort and Civil RICO Claims

Defendants contend that plaintiffs' constitutional tort claims raised under *Bivens* and civil RICO claims are precluded by exclusive remedies under the Civil Service Reform Act ("CSRA") and Title VII of the Civil Rights Act.

### 1. Civil Service Reform Act Precludes *Bivens* Claims

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court first recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct.

1937, 173 L.Ed.2d 868 (2009)(quoting *Correctional Svcs. Corp. v. Malesko,* 534 U.S. 61, 66, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)). Plaintiffs contend that their First, Fourth, Fifth, and Fourteenth Amendment rights were intentionally violated by defendants and thus they are eligible for damages. Defendants claim that remedies afforded by the CSRA and Title VII effectively preclude plaintiffs' *Bivens* claims.

■ The CSRA permits federal employees to challenge "prohibited personnel practices" by their supervisors, including unconstitutional personnel actions. *See* 5 U.S.C. § 2302. The "prohibited personnel practices" of the CSRA include taking a personnel action as a result of an individual's "personnel action[s]" violative of its merit system principles. 5 U.S.C. § 2302(b)(11). The merit system principles include treating employees fairly and equitably, "with proper regard for their privacy and constitutional rights." *Id.* at § 2301(b)(2). Therefore, an unconstitutional personnel action violates merit principles and is covered by the remedies established under the CSRA for prohibited personnel actions.

The CSRA also covers whistleblower claims of workplace retaliation based on the disclosure of a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *See* 5 U.S.C. § 2302(b)(8). Under the CSRA, whistleblowers may take their claims to the Office of Special Counsel ("OSC") for investigation. 5 U.S.C. § 1206(a)(1). When the OSC has reasonable grounds to believe that a prohibited personnel practice has occurred, it may petition the Merit System Protection Board ("MSPB") to stay the personnel action, or to correct the prohibited personnel practice. 5 U.S.C. § 1206(c)(1)(B); *see also Elgin v. Dep't of*

*Treas.,* 567 U.S. ——, 132 S.Ct. 2126, 2130, 183 L.Ed.2d 1 (2012). It may even seek disciplinary action against the employee who committed the prohibited practice. *Id.* at § 1206(g).

In *Bush v. Lucas,* 462 U.S. 367, 388–390, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Supreme Court addressed whether a federal employee could recover damages for defamation and violation of his First Amendment constitutional rights. The unanimous Court declined to create a constitutional claim for damages among federal employees given the existing CSRA "elaborate remedial system . . . constructed step by step, with careful attention to conflicting policy considerations." *See Bush v. Lucas,* 462 U.S. at 388–390, 103 S.Ct. 2404. This Circuit, closely following *Bush,* has refused to entertain similar constitutional claims by federal employees. *Roth v. United States,* 952 F.2d 611 (1st Cir.1991); *Berrios v. Dept. of the Army,* 884 F.2d 28, 31 (1st Cir.1989). In the instant case, the First Amendment claim is a claim no more, as plaintiffs voluntarily withdrew the First Amendment claims. *See* Docket No. 72.

■ Plaintiffs' constitutional *Bivens* claims against defendants in their individual capacities fall squarely within the established CSRA framework and are thus precluded. Plaintiffs allege violations of their First, Fourth, Fifth, and Fourteenth Amendment rights but fail to recognize that Congress' statutory scheme provided in CSRA precludes job-related *Bivens* actions by federal employees. *Todd v. Holder,* 872 F.Supp.2d 1284, 1287 (N.D.Ala. 2012). Plaintiffs' creative attempt to allege constitutional violations under *Bivens* rather than under the provisions of the CSRA will not be recognized by this Court and thus these claims are dismissed.

## 2. Title VII

Plaintiffs' Third Amended Complaint alleges that defendants violated plaintiffs' civil rights through the creation of a RICO conspiracy discriminating against their racial and national origin. *See* Docket No. 61.

 The Supreme Court has held that Title VII, 42 U.S.C. § 2000e–16, is an exclusive and pre-emptive avenue for cases involving federal employment discrimination. *Brown v. GSA*, 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). The dilemma for the plaintiffs, however, is that once a discrimination claim is asserted, Title VII provides an exclusive remedial system that can displace plaintiffs' other creatively pled claims. As an initial matter, the plaintiffs are expressly suing the defendants only in their personal capacity, while Title VII allows suit only against the head of the relevant federal agency. 42 U.S.C. § 2000e–16(c).[16] Hence, any claims under Title VII against the defendants in their personal capacity are dismissed.

Moreover, the plaintiffs' claim for damages is inconsistent with the damages allowable under Title VII. 42 U.S.C. § 2000e–16(d) (incorporating by reference 42 U.S.C. § 2000e–5(g)). The plaintiffs have ignored the administrative exhaustion requirements imposed by Title VII, which effectively bars the court house door for that claim. *See Bonilla v. Muebles J.J. Alvarez, Inc.,* 194 F.3d 275, 278 (1st Cir. 1999); *Duncan v. Manager, Dep't of Safety,* 397 F.3d 1300, 1314 (10th Cir.2005); *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378–79 (5th Cir.2002).

 The First Circuit has consistently decided that "where the gravamen of the complaint is Title VII discrimination, the only remedy available is under Title VII." *Rivera–Rosario v. U.S. Dept. of Agriculture,* 151 F.3d 34, 38 (1st Cir.1998). District Courts in the First Circuit have followed closely. *Kwatowski v. Runyon,* 917 F.Supp. 877, 888 (D.Mass.1996), (holding that plaintiff's *Bivens* claims would not be implied to redress conduct actionable under Title VII); *Diaz–Romero v. Ashcroft,* 472 F.Supp.2d 156, 161 (D.P.R.2007), (finding that Title VII remedies for federal employees are exclusive).

 Just as plaintiffs' *Bivens* claims must be brought under the CSRA statutory scheme, Title VII provides the appropriate outlet for plaintiffs' discrimination claims. Plaintiffs instead tried to circumvent Title VII statutory requirements to no avail, as Title VII does not provide a remedy to plaintiffs when defendants are sued in their personal capacity only in

---

**16.** 42 U.S.C. § 2000e16(c) Civil action by employee or applicant for employment for redress of grievances; time for bringing the action: head of department, agency, or unit as defendant, provides:

Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders

or **after one hundred and eighty days** from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition or his complaint, or by failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the **head of the department, agency, or unit, as appropriate, shall be the defendant.** (Emphasis ours).

federal employment. *See* 42 U.S.C. § 2000e–16(c), *infra.*[17] Hence, plaintiffs' claims for discrimination under Title VII, are dismissed.

## D. Qualified Immunity

Even if plaintiff's complaint adequately pleads the necessary elements of a viable *Bivens* claim against defendants, and assuming that claim is not preempted by the CSRA, defendants would still be entitled to the protections afforded by qualified immunity.

 Qualified immunity is an immunity from suit rather than a mere defense to liability. *See Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Qualified immunity provides "ample room for mistaken judgments" and protects all government officials except "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Thus, officials are immune from claims for damages "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

 In *Wood v. Moss,* —— U.S. ——, 134 S.Ct. 2056, 2061, 188 L.Ed.2d 1039 (2014), the Court held that "[o]fficials are sheltered from suit, under a doctrine known as qualified immunity, when their conduct 'does not violate clearly established ... constitutional rights' a reasonable official, similarly situated, would have comprehended. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)." *Id.* at 2061. "The First Amendment, our precedent makes plain, disfavors viewpoint-based discrimination. *See Rosenberger v. Rector and Visitors of Univ. of Va.,* 515 U.S. 819, 828, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). *Id.* at 2061. "The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.' *Ashcroft v. al–Kidd,* 563 U.S. 731, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)." *Id.* at 2067. "[U]nder the governing pleading standard, the 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937)." *Id.* at 2067. "Requiring the alleged violation of law to be 'clearly established' 'balances ... the need to hold public officials accountable when they exercise

17. Courts of appeals' decisions in most if not all circuits have decided that there is no individual liability even in private employment. *Fantini v. Salem State College,* 557 F.3d 22, 28–31 (1st Cir.2009). "Most circuit court have held that no personal liability can be attached to agents under Title VII. *See Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) ... *see also Albra v. Advan, Inc.,* 490 F.3d 826, 830 (11th Cir.2007); ... *Williams v. Banning,* 72 F.3d 552, 555 (7th Cir.1995); ... *Miller v. Maxwell's Intern, Inc.,* 991 F.2d 583, 587 (9th Cir.1993), *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); ... *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1077–1078 (3rd Cir.1996) (citing *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1315 (2d Cir.1995); ... *Powell v. Yellow Book USA, Inc.,* 445 F.3d 1074, 1079 (8th Cir.2006); ... *Lissau v. Southern Food Service, Inc.,* 159 F.3d 177, 180 (4th Cir.1998) ... [and the collection of cases cited therein]."

power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.' *Pearson v. Callahan,* 555 U.S. at 231, 129 S.Ct. 808." *Id.* at 2067. "[I]ndividual government officials 'cannot be held liable' in a *Bivens* suit 'unless they themselves acted [unconstitutionally].' *Iqbal,* 556 U.S. at 683, 129 S.Ct. 1937." *Id.* at 2070. *See also Reichle v. Howards,* ––– U.S. ––––, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012) ("To be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.' (citing *Ashcroft v. Kidd,* 563 U.S. 731, 131 S.Ct. 2074, 2078, 179 L.Ed.2d 1149 (2011)."

■ Currently, the First Circuit applies a two-part test to analyze the application of qualified immunity. *Maldonado v. Fontanes,* 568 F.3d 263, 269 (1st Cir.2009)(clarifying that the second steps of the two-step inquiry essentially compresses two prongs of the previous three-step inquiry). Thus, under the presently applicable inquiry, in order "[t]o determine whether a particular officer is entitled to qualified immunity, a court must decide: (1)whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2)if so, whether the right was clearly established at the time of the defendant's alleged violation.". *Estrada v. Rhode Island,* 594 F.3d 56, 62–63 (1st Cir.2010)(internal quotations omitted). Either step of the analysis may be used first in the Court's analysis. *Maldonado v. Fontanes,* 568 F.3d 263, 269 (1st Cir.2009).

■ The second step, in turn, has two aspects. *Id.* First, the Court must analyze whether "the contours of the right [were] sufficiently clear [so] that a reasonable official would understand that what he

[did] violate[d] that right." *Id.* Second, the Court must analyze "whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights" in the situation with which the defendant was confronted. *Id.* Thus, "the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Id. See also Alberty Aviles v. Department of the Army,* 666 F.Supp.2d 224, 229–232 (D.P.R.2009).

Though Plaintiffs allege violations of protected rights under the First, Fourth, Fifth, and Fourteenth Amendments, this Court fails to find the factual basis to support these allegations and thus the first step of the qualified immunity analysis falters.

■ Plaintiffs' claims of deprivation of their employment property rights and their security clearances do not constitute due process or constitutional rights violations because they lack a protected property right.[18] *See* Docket No. 61. Federal Courts have maintained that placement of an employee in paid administrative leave pending an investigation does not constitute an adverse employment action, does not create a protected property interest, and does not give rise to a due process violation. *See Ghaly v. United States Department of Agriculture,* 228 F.Supp.2d 283, 289, 291 (S.D.N.Y.2002)(citing *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)); *see also Watkins v. McConologue,* 820 F.Supp. 70, 72 (S.D.N.Y.), *affirmed,* 978 F.2d 706 (2nd Cir.1992). Under the qualified immunity analysis, plaintiffs' claims are barred.

---

**18.** In any event, plaintiffs Gonzalez and Franco were not deprived of their employment rights, as they were both placed on Administrative Leave with Pay during the investigation was being conducted. Moreover, both plaintiffs failed to exhaust the administrative remedies.

In any event, qualified immunity does not have to be addressed as defendants are all providing testimony to a criminal investigation, and are, hence, immune from suit, as they enjoy absolute immunity.

### 1. First Amendment Claims

 Plaintiffs allege that defendants violated their freedom of speech by seeking to "censor and deprive plaintiffs of their right to speak on behalf of diligent performance of their duty and responsibilities as DACP officers." *See* Docket No. 61. Plaintiffs fail to explain specific behavior that allegedly deprived them of their First Amendment rights and provide bare allegations unsupported by relevant facts. Such bare and vague allegations fall entirely short of defeating qualified immunity. *Crawford–El v. Britton,* 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). In the instant case, the Court is cognizant that the plaintiffs voluntarily withdrew the First Amendment claim. *See* Docket No. 72.

### 2. Fourth Amendment Claims

According to the plaintiffs, defendants violated their Fourth Amendment rights when they conducted a search and seizure "into plaintiffs' careers and personal lives." *See* Docket No. 61. However, plaintiffs fail to provide detailed factual support to fill the void left by these empty allegations, aside from the fact of also being speculative. This Court is provided with no inkling as to what these violations consist of and must dismiss said claims. In any event, plaintiffs voluntarily withdrew all the First Amendment claims. *See* Docket No. 72.

### 3. Fifth and Fourteenth Amendment Claims

 In order to establish a substantive due process violation, "the plaintiff must show both that the acts were so egregious as to shock the conscience and that they deprived him of a protected interest in life, liberty, or property." *Pagan v. Calderon,* 448 F.3d 16, 32 (1st Cir.2006). Furthermore, the First Circuit has articulated the following approach: "Before a constitutional infringement occurs, state action must in and of itself be egregiously unacceptable, outrageous, or conscience-shocking." *Amsden v. Moran,* 904 F.2d 748, 754 (1st Cir.1990).

 In *County of Sacramento v. Lewis,* the Supreme Court stated that conclusory allegations that federal defendants misrepresented and lied about the plaintiffs did not amount to the type of conduct that is so egregious and outrageous that it may be fairly said to shock the contemporary conscience. *County of Sacramento v. Lewis,* 523 U.S. 833, 847, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). The plaintiffs' claim that the criminal investigation of their behavior was slanted against them and that the motives of the officials were tainted is insufficient to implicate constitutional due process concerns as a matter of law.

Because this Court finds that plaintiffs have failed to allege credible violations of their constitutional rights, the Court need not address the second prong of our qualified immunity analysis. The Court hereby GRANTS Defendants' request for qualified immunity.

### E. Qualified Immunity Bars RICO Claims

 Plaintiffs' RICO claims are barred by qualified immunity. Numerous courts have held that the doctrine of qualified immunity provides a defense to civil RICO claims, as well as other federal statutory causes of action. *See Doe v. Attorney General,* 941 F.2d 780, 799 (9th Cir.1991) (finding qualified immunity an applicable defense against Section 504 of the Rehabilitation Act); *Gonzalez v. Lee County*

*Housing,* 161 F.3d 1290, 1300 (11th Cir. 1998) ("this court and others have held that public officials are entitled to assert the defense of qualified immunity when sued under a federal statute other than section 1983," noting that other courts have applied the defense to claims arising under eight other separate federal statutes, including RICO); *Cullinan v. Abramson,* 128 F.3d 301, 312 (6th Cir. 1997) (finding qualified immunity barred RICO claims against city officials); *Trugreen Landcare v. City of Dallas,* 512 F.Supp.2d 613, 622 (N.D.Texas 2007), (finding defendant to be entitled to qualified immunity against RICO claims); *Brown v. Nationsbank Corp.,* 188 F.3d 579, 588 (5th Cir.1999) (holding that individual defendants were entitled to qualified immunity from suit alleging RICO claim because rights that served as basis of claim were not clearly established at the time of defendants' alleged acts).

Because defendants are entitled to qualified immunity, plaintiffs' civil RICO claims must fail.

### Conclusion

For the reasons stated above, the defendants' *Motion to Dismiss* filed by Rogelio Velez, Berta Santiago, Gunner Pederson and Raymond Johnson, as supplemented, is hereby granted and the claims against them are dismissed with prejudice, *see* Docket entries No. 64,66, 82. However, as to the other co-defendants that are in the same position, and not served herein, dismissal without prejudice is the proper disposition subject to the *caveat* stated by the Court.

Judgment will be entered accordingly.

IT IS SO ORDERED.